Argued and submitted September 9, affirmed as modified December 30, 1982

# In the Matter of the Marriage of
## SEEFELD,
*Petitioner on Review,*
*and*
## SEEFELD,
*Respondent on Review.*

### (CA A20769, SC 28639)

657 P2d 201

Gary E. Norman, Albany, argued the cause for petitioner on review. With him on the brief was Scott & Norman, P.C., Albany.

D. Richard Fischer, Astoria, argued the cause for respondent on review. With him on the brief was Larson & Fischer, Astoria.

ROBERTS, J.

Peterson, J. dissented and filed an opinion in which Lent, C. J. and Carson, J. join.

## ROBERTS, J.

In this dissolution of marriage case we allowed review to determine the proper distribution of property brought into the marriage by one of the parties.

The parties were married for five years; one child was born during the marriage. Husband brought into the marriage approximately $37,000 which included $11,300 he invested in the purchase of the parties' residence.[1] The difference remaining is primarily his retirement fund contributions, life insurance cash value and an automobile. He also brought to the marriage a stamp collection valued at $50,000 at the time of trial. Wife's assets at the time of the marriage were $3,450 which included her retirement contributions, the value of household furniture and an automobile. At the time of dissolution the value of the home had increased so that it had an equity of approximately $43,000. Husband's income at the time of trial was $774 net per month although he had previously been a chemistry professor at a community college earning a much greater salary. Wife's salary as a secretary was $611 net per month. The court ordered husband to pay child support of $200 per month and spousal support of $50 per month for five years. It made the following distribution of property.

| "Asset | | Husband Petitioner | Wife Respondent |
|---|---|---|---|
| "Family Residence | $68,000 | | |
| | 24,800 (mortgage) | | |
| | $43,200 (equity) | | $43,200 |
| "Furniture | | | 2,500 |
| "Petitioner's Retirement | | $19,500 | |
| "Respondent's Retirement | | | 2,500 |
| "Petitioner's Life Ins. (cash value) | | 6,866 | |
| "Stamp Collection | | 50,000 | |
| "Cash - Savings Acct. | | | 2,000 |
| "1939 Dodge Car | | 2,000 | |
| "Camera, Stereo, Furniture, Office Furniture, 1964 Chrysler in his possession | | 2,100 | |
| "TOTALS | | $80,466 | $50,200" |

[1] The dissent states that "husband owned the house." That is not supported by the record. The record establishes that husband sold a house in order to buy

Husband contends the court should not have included the stamp collection in the distribution of assets and that the remainder of the property should have been divided so that the parties were placed as nearly as possible in the financial position they would have held if no marriage had taken place.

■ We recently considered the question of the proper distribution of inherited property, *Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982), in which the kinds of property described in ORS 107.105(1)(e) are analyzed. ORS 107.105(1)(e) provides:

"Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"* * * * *

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property. The court shall require full disclosure of all assets by the parties in arriving at a just property division. In arriving at a just and proper division of property, the court shall consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties."

We said in *Pierson* that this statute includes two terms which describe classes of property.

"The first term appears in the first sentence and describes the entire class of property within the

---

another one, that a house was purchased the same year the parties were married and that it was purchased in both names of the parties.

dispositional authority of the court in a dissolution case: 'the real or personal property, or both, of either or both of the parties.' * * *

"The other term, 'marital assets,' appears later in the statute. It is not further defined, but the reference to 'acquisition of property during the marriage' indicates that it includes neither assets brought into the marriage by either spouse nor assets acquired by them after dissolution. The term 'real or personal property, or both, of either or both of the parties' in the first sentence describes a larger class of property than the term 'marital assets' because it can include property owned prior to the marriage. The upshot is that property may be subject to the authority of the court to divide property, yet not be a marital asset." *Pierson and Pierson, supra,* 294 Or at 121-122.

Husband's stamp collection is not a marital asset but it is, nonetheless, properly included in the property which the court has authority to divide. Also, the amount husband contributed initially to the purchase of the residence of the parties was properly included.

Of significance to this case is the fact that husband contends a five year marriage is a short-term marriage.[2] Husband asks that he be awarded his stamp collection, that the home be sold, that he be reimbursed for his investment in the home of $11,300, and that the remaining proceeds from the sale be divided equally between the parties, giving them each approximately $16,000. The Court of Appeals has addressed the question of distribution of property in short term marriages and held:

"Where the marriage is of short duration and neither party has foregone employment opportunities, the amount of each party's contribution to assets acquired during the marriage is a more important factor in formulating an equitable property division than it would be after a long-term marriage where one spouse relinquished employment

---

[2] Husband cites *York v. York,* 30 Or App 937, 569 P2d 32 (1977), *Frishkoff v. Frishkoff,* 45 Or App 1033, 610 P2d 831 (1980) and *Nolan v. Nolan,* 20 Or App 432, 532 P2d 35 (1975) as examples of short term marriages. *York* was a two year marriage, *Frishkoff* was an eight and one-half year marriage and *Nolan* was a four year marriage. The Court of Appeals specifically stated in *Frishkoff,* "[w]e note at the outset that this is not a case where the marriage is of short duration," 45 Or App at 1041. We are reluctant to categorize arbitrarily this five year marriage as short term.

to care for the family. * * * While both parties should share in the increase in value of marital assets, the general approach in dividing property after a short-term marriage is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place. * * *" (Cites omitted.) *York and York,* 30 Or App 937, 939, 569 P2d 32 (1977).

In *York* the husband brought most of the assets to the marriage with the principal asset being the family home purchased with funds received from the sale of husband's assets. The trial court had awarded husband over half the parties' assets, but the Court of Appeals, in light of the two year marriage, awarded the husband an additional judgment equal to half the equity in the home. We see nothing wrong with the rule in *York* nor its application to the facts there.

We said, however, in *Jenks and Jenks,* 294 Or 236, 656 P2d 286 (1982) that there is a better way to describe the reason for dividing property than simply characterizing marriages as short-term, long-term or something in between. In *Jenks* we said,

> "If the marriage is terminated before the parties' financial affairs become commingled or committed to the needs of the children to the point that the parties cannot readily be restored to their pre-marital situations, then property division is a relatively simple task in the nature of a rescission. * * * With each common financial act or decision, however, the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult. The origin of each item becomes less significant in the overall task of making a property division which is 'just and proper in all the circumstances.' " 294 Or at 242.

Here, the parties made a common financial decision to purchase a home. Wife has continued to work and has made a financial contribution to the household expenses including the mortgage payments. And there is the additional factor of the child for whom the parties must plan and care. It would be possible "to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place" but that would not necessarily be "just and proper in all the circumstances,"

which include that the parties have continued responsibility for the welfare of a child. This may affect the allocation of necessary household goods such as the home, furniture, and furnishings, and it also may affect the allocation of different economic assets to one or the other party even when the division is numerically equal. Here the mother has custody and she, therefore, shoulders the major responsibility of providing a home for the child. For this reason we are reluctant to order that the family home be sold. In *Haguewood and Haguewood,* 292 Or 197, 206, 638 P2d 1135 (1981) we stated:

> "Dissolution of a marriage is analogous in many ways to dissolution of a partnership or other joint financial venture. * * * The analogy is not complete, however. Unlike a business dissolution, a marital dissolution often requires the achievement of certain social as well as financial objectives which may be unique to the parties."

■ In *Grove v. Grove,* 280 Or 341, 571 P2d 477 (1977) the issue was the proper amount and extent of spousal support, but we said "* * * that issue cannot adequately be considered except in light of the provisions in the dissolution decree for division of property and child support. * * * In practice, the financial portions of a dissolution decree are worked out together, and none can be considered in isolation." 280 Or at 344. Likewise, in this case we do not consider the equities of property division in isolation. The present division of property fails to acknowledge that husband contributed the bulk of the assets to the marriage. Our inquiry, however, does not end there. We interpret the "just and proper in all the circumstances" language of ORS 107.105(1)(e) to mean that the court shall consider all the circumstances of the parties in determining the distribution of real and personal property, including the obligations of the parties for child and spousal support. "The equation of property division and the entitlement of a party to solely acquired property may be disturbed in order to accomplish broader purposes of a dissolution." *Pierson and Pierson, supra,* 294 Or at 123. A "broader" purpose here is to divide the property so that the child can adequately be cared for.

■ This does not mean that property should be divided differently simply because there are children to care for. Where the assets and foreseeable earnings available to

the parties are reasonably sufficient to provide funds for the needs of the children, the proper division of property and the award of child support and spousal support should each be considered separately, dividing the property as may be "just and proper" between the parties.

■ Where earnings and assets are not sufficient to support the needs of the children as well as both parties, however, courts often cannot escape the necessity to determine which combination of support payments, property, and other sources of income will most effectively provide for the children. Frequently this results in an award of the family home to the custodial parent. It may also involve an award of property that helps to meet current needs (for instance, an automobile for family transportation) rather than imposing higher child support payments that cannot realistically be counted on.

In this case, the income of husband is such that an increase in child support would require either that he sell the stamp collection or use his equity from the house should we follow his request. His income at the time of trial was only $774 net per month. Given the choice of a significant increase in child support or an award of the house to wife with a judgment lien to the husband, the latter is preferable.

While we do not agree with husband's property distribution proposal we think the factors of the acquisition of the stamp collection prior to the marriage, the child support and spousal support obligations of the husband, and the relative incomes of the parties indicate that husband should realize some return on his investment in the family home. We, therefore, modify the decree to award husband a judgment lien against the home in the amount of $10,000, payable within five years from the date of this decision at the statutory rate of interest or at such time as the home is sold, whichever is first.

Affirmed as modified. No costs to either party.

**PETERSON, J.,** dissenting.

The majority states that, insofar as the division of property is concerned, "[i]t would be possible 'to place the parties as nearly as possible in the financial position they

would have held if no marriage had taken place' * * *," but does not do so because husband's monthly income is not large enough to pay adequate child support without selling his stamp collection or house. The majority therefore awards a larger share of the property than the custodial parent would otherwise receive were there no children. Although the welfare of the child is important, if the noncustodial parent has the ability to provide adequate financial support for the child, from earnings or by the sale of capital assets, there is neither need for nor fairness in awarding more property to the custodial parent than he or she would receive were there no children.

The term "marital assets," as used in the second and fourth sentences of ORS 107.105(1)(e), has a twofold significance. One is the tax significance flowing from the transfer of a marital asset from one spouse to another. *See Engle and Engle,* 293 Or 207, 646 P2d 20 (1982). The other is the significance attached to the contribution of the spouse "as a homemaker" and the related presumption (in the third sentence of the statute) "that both spouses have contributed equally to the acquisition of property during the marriage." In *Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982), we held that the term "marital assets" does not include assets brought into the marriage. In this case, although the noncustodial parent brought the house and other property into the marriage, he has at all times stipulated that the increases in the equity in the home, retirement fund and life insurance he brought into the marriage are "marital assets" which should be divided equally between the spouses.

The principal circumstances to be considered in this case are these:

— Husband and wife are both wage earners, netting respectively $774 and $611 per month.

— A four-year-old child, in custody of the wife.

— A five-year marriage.

— Husband owned the house, the stamp collection and other property before the marriage.[1]

---

[1] It is not clear whether the house was purchased before or soon after the marriage. It is clear that the husband's cash was used to buy the home. In a

— The equity in the house has increased to $43,200, partly because of appreciation and partly because of their joint efforts in making monthly payments. The net increase in the equity is $31,000. Other separately owned property has also increased.

Husband contends a five-year marriage is a short-term marriage. He cites *York and York,* 30 Or App 937, 569 P2d 32 (1977), contending that, except for the increase in the asset value during the marriage, the parties should be returned as near as possible to the financial position they would have held had there been no marriage.[2] Wife claims that because she has the child to raise, the house should be awarded to her. She argues:

"* * * Although the house does need maintenance Wife cannot afford to replace it. It has a low interest Department of Veterans' Affair loan and the mortgage payments are less than comparable rentals. The Respondent has lived in Astoria for most of her life and plans to raise her daughter there. This is the sole security she and Holly have. Wife would have little hope of acquiring another house should the residence be sold or the equity divided other than as the court has decreed. Husband however, should he choose to exercise it, has the proven ability and skills to acquire more assets and a greater income than he apparently is presently satisfied with."

memorandum opinion the trial court stated, "Petitioner-Husband testified he brought $37,000 into the marriage represented by equity in a home and cash of some $8,900." The $37,000 figure includes other assets.

[2]

"Where the marriage is of short duration and neither party has foregone employment opportunities, the amount of each party's contribution to assets acquired during the marriage is a more important factor in formulating an equitable property division than it would be after a long-term marriage where one spouse relinquished employment to care for the family. * * * While both parties should share in the increase in value of marital assets, the general approach in dividing property after a short-term marriage is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place. * * *" (Citations omitted.) *York and York,* 30 Or App 937, 939, 569 P2d 32 (1977).

Husband also cites *Frishkoff v. Frishkoff,* 45 Or App 1033, 610 P2d 831 (1980) and *Nolan and Nolan,* 20 Or App 432, 532 P2d 35 (1975) as examples of short term marriages. *York* was a two-year marriage, *Frishkoff* was an eight and one-half-year marriage and *Nolan* was a four-year marriage. The Court of Appeals specifically stated in *Frishkoff,* "[w]e note at the outset that this is not a case where the marriage is of short duration," 45 Or App at 1041. We are reluctant to categorize arbitrarily this five-year marriage as short term.

Where the noncustodial parent has the power to discharge support obligations, whether from earnings or capital assets, issues pertaining to division of property normally should be resolved separately from issues pertaining to child support. What is "just and proper [for the husband noncustodial parent] to contribute toward the support and welfare of [the child]" under the child support statute, ORS 107.105(1)(b),[3] is the amount of money necessary to meet his share of the child's needs.

Although questions of property division and child support are related, each has a separate function. The function of property division is to divide the parties' assets on a "just and proper" basis. The function of child support is to provide, by a just and proper award of money, for the support and welfare of the children.

This is not to say that the welfare of the child is not to be considered in making the division of property. In many situations in which child custody is involved, it may be appropriate to award the house to the custodial parent to minimize distress to children who, in addition to being subjected to the dissolution of the family unit, might suffer further distress in moving to a new neighborhood, making new friends, and attending a different school. In many cases the assets and earnings are insufficient to achieve an entirely satisfactory support and property division, consistent with the needs of the child.

Although it has been stated that in a short-term marriage the parties should, insofar as possible, be placed in a financial position that they would have been in had the marriage not occurred, *Wirthlin v. Wirthlin,* 19 Or App 256, 258-59, 527 P2d 147 (1974), a better statement of a rule is that in a marriage as short as the one involved in this case,

---

[3] ORS 107.105(1)(b) provides:

"Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power to decree as follows:

"* * * * *.

"(b) For the recovery from the party not allowed the care and custody of such children, or from either party or both parties if joint custody is decreed, *such amount of money,* in gross or in instalments, or both, as may be just and proper for such party, either party or both parties to contribute toward the support and welfare of such children. * * *" (Emphasis added.)

each party should receive property roughly proportionate to that party's contribution to the marriage. *Nolan and Nolan,* 20 Or App 432, 436, 532 P2d 35 (1975). Normally, the longer the marriage the more equal is the contribution. In some cases, a spouse's entitlement arises from the status of a homemaker. See the second sentence of ORS 107.105(1)(e). In this case, the outer limit of what is just and proper, insofar as property division is concerned, is an equal division of the increase in value of property brought into the marriage by the other spouse. Throughout this case the husband has suggested an equal division in the increases in value. The majority gives wife more because she is given custody of the child. She is given an asset that she can sell and put the proceeds to her uses.

This area of the law poses vexing, repeated problems. In many cases the assets and incomes are insufficient to provide a full loaf of child support to the child. Here, were the noncustodial parent awarded the property he should receive, he could pay child support by invading his capital. There is no reason to give the custodial parent a double loaf of property because the noncustodial parent's earned income is low.

Lent, C. J., and Carson, J., join in this dissent.