Submitted on record and petition for review February 17, affirmed as modified
April 6, 1983

In the Matter of the Marriage of

MILLER,
*Respondent on Review,*
*and*
MILLER,
*Petitioner on Review.*

(TC No. 80 2304, CA A21859, SC 28674)

661 P2d 1361

S. David Eves, of Ringo, Walton & Eves, P.C., Corvallis, filed the petition and memorandum of law for petitioner on review.

No appearance contra.

Before Lent, Chief Justice, and Peterson, Campbell, Roberts, Carson and Jones, Justices.

JONES, J.

Campbell, J., filed a dissenting opinion.

## JONES, J.

We allowed review to consider the distribution of property in this case in view of our recent decisions in *Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982); *Jenks and Jenks,* 294 Or 236, 656 P2d 286 (1982); and *Seefeld and Seefeld,* 294 Or 345, 657 P2d 201 (1982).

The wife appeals from those provisions of a decree of dissolution awarding to the husband a judgment and lien against a one-acre parcel adjoining the home of the parties to secure the sum of $15,000. This sum was to be paid without interest to husband no later than five years from the date of the decree, July 9, 1981.

The parties have been married twice to each other. The first marriage occurred on December 17, 1960, and resulted in a dissolution in May, 1975. The wife was awarded custody of the parties' two children. The one-acre parcel at issue here was awarded to the wife in the 1975 decree. The parties remarried on December 18, 1976, and this marriage was dissolved effective July 21, 1981.

The record indicates that the parties' property was awarded as follows:

### PROPERTY AWARDED TO THE WIFE

| Property | Estimated value |
|---|---|
| Residence ($9,000 owed) | $85,000-90,000[1] |
| Adjoining one-acre parcel (free and clear) | 15,000[2] |
| Attorney fees | 500 |
| TOTAL ESTIMATED VALUE | $100,500-105,500 |

[1] Based on husband's testimony.

[2] Based on husband's testimony.

## PROPERTY AWARDED TO THE HUSBAND

| Property | Estimated value |
|---|---|
| 23 acres (2 parcels; $9,000 owed) | $45,000-100,000[3] |
| Caterpillar truck | 3,500 |
| Cows (4) | 1,600 |
| 1966 Corvette | 6,000-8,000[4] |
| Judgment lien | 15,000 |
| TOTAL ESTIMATED VALUE | $71,100-128,100 |

The husband also received a trailer and pickup truck, as well as personal property and furniture. The wife was awarded a Datsun automobile, household furnishings and personal property. No monetary value was determined on this property. The husband was ordered to pay child support at the rate of $175 per child until the children (Dawnita born 6/27/65 and Vonda born 10/6/66) reach the age of majority. The Court of Appeals affirmed the trial court decree without a written opinion.

The husband's major employment is as a truck driver earning approximately $10 per hour. In 1980, the last full year husband worked, he earned $33,000 including overtime. Testimony at trial indicates the husband has earned in the neighborhood of $27,000 in each of the past few years. Most recently he has not worked steadily as a result of poor economic conditions in the lumber industry.

The wife first began working full-time in 1980 when she earned approximately $11,000. She has few work skills, little employment experience and has been for the most part a homemaker.[5]

During the parties' hiatus from marriage to each other the husband acquired the 23-acre parcel. At the time the trial court entered the decree in this case the testimony

---

[3] Based on wife's testimony.

[4] Based on wife's testimony.

[5] Oregon's statutory scheme, ORS 107.105, et seq., provides that a spouse should not be penalized at dissolution for having taken a role in the marriage which did not generate income, but which clearly was aimed at promoting the well-being of the marriage and the family. This premise is discussed by Kulzer, Law and the Housewife: Property, Divorce and Death, 28 U Fla L Rev 1 (1975).

indicated that approximately $9,000 was owing on the 23-acre parcel. Testimony as to the value of the 23-acre parcel ranged from the husband's real estate listing of $100,000 to the husband's claim of $45,000 value. There was approximately $9,000 owing on the residence. The lot adjoining the residence was owned free and clear. Neither party offered expert testimony as to the value of any property at issue.

The issue in this case is whether the husband should have been awarded the judgment of $15,000 and the lien on the wife's property. We begin our review by reference to the controlling statute, ORS 107.105(1)(e), which was amended by the legislature effective after the trial of this case. Because we are ruling *de novo,* and absent any suggestion it would be unfair, *see Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982), we shall follow the current version of the statute which reads:

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

\* \* \* \* \*

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution after October 4, 1977, shall be considered a partitioning of jointly owned property. The court shall require full disclosure of all assets by the parties in arriving at a just property division. In arriving at a just and proper division of property, the court shall consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties."

In the instant case there is acreage acquired by the husband outside the marriage and title is in the husband's name. The family residence and adjoining acre is in the

wife's name exclusively under the award in the previous dissolution decree. Consequently, neither party's property is an "acquisition of property during the marriage." However, as we recently held in *Pierson,* any property owned by either party is subject to dispositional authority of the court pursuant to the first sentence of ORS 107.105(1)(e). *Accord, Jenks and Jenks,* 294 Or at 240.

Our task is to insure a property division which is "just and proper" in all the circumstances. As we said in *Jenks:*

"When couples enter marriage, they ordinarily commit themselves to an indefinite shared future of which shared finances are a part. Acquisitions are made, foregone or replaced for the good of the family unit rather than for the financial interests of either spouse. Property is bought, sold, enhanced, diminished, intermixed and used without regard to ease of division upon termination of the marriage. All this may be modified by agreement, of course, but, by the nature of the marital relationship, couples ordinarily pledge their troth for better or worse until death parts them and their financial affairs are conducted accordingly.

"If the marriage is terminated before the parties' financial affairs become commingled or committed to the needs of children to the point that the parties cannot readily be restored to their pre-marital situations, then property division is a relatively simple task in the nature of a rescission. *See, York and York,* 30 Or App 937, 569 P2d 32 (1977). That, rather than any specific number of months or years, is what we mean by a 'short-term marriage.' With each common financial act or decision, however, the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult. The origin of each item becomes less significant in the overall task of making a property division which is 'just and proper in all the circumstances.' * * *" 294 Or at 242.

We think this is a case where the property division should be in the nature of a rescission.[6] The goal we seek to achieve is accomplished by deleting from the decree the husband's $15,000 judgment and the lien on wife's property. We believe this distribution of the parties' assets is consistent with our decisions in *Pierson, Jenks* and *Seefeld.* We recognize that there may have been and probably were

increases in the value of the family residence and the 23 acres during the five years of the marriage and that any appreciation in value is arguably a "marital asset." However, our decision here eliminates the necessity of addressing this issue. *See, Seefeld and Seefeld,* 294 Or at 350, where we approved the language used in *York and York,* 30 Or App 937, 939, 569 P2d 32 (1977):

> "* * * [W]hile both parties should share in the increase in value of marital assets, the general approach in dividing property after a short-term marriage is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place."

Accordingly, the provision of the decree awarding the husband a $15,000 judgment and lien against the wife's property is stricken.

Affirmed as modified. No costs to either party.

**CAMPBELL, J.,** dissenting.

I dissent. In my opinion this case involves only questions of fact, therefore I would affirm the trial judge who saw and heard the witnesses.

---

[6] Rescission as used here is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place. *See, York and York,* 30 Or App 937, 939, 569 P2d 32 (1977); *cf., Wirthlin and Wirthlin,* 19 Or App 256, 527 P2d 147 (1974).