Argued and submitted July 11, resubmitted In Banc September 27, 1995, affirmed
January 24, petition for review allowed June 18, 1996 (323 Or 483)
See later issue Oregon Reports

In the Matter of the Marriage of

David MASSEE,
*Respondent,*

*and*

Constance Genevieve MASSEE,
*Appellant.*

(93C-31338; CA A84859)

911 P2d 320

590

J. Michael Alexander argued the cause for appellant. With him on the brief was Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C.

John Hemann argued the cause for respondent. With him on the brief was Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

LANDAU, J.

Edmonds, J., concurring.

## LANDAU, J.

Wife appeals from a dissolution of marriage judgment, assigning error to the trial court's property division. On de novo review, ORS 19.125(3), we affirm.

The parties were married in February 1991. At the time of the trial, husband was 61 years of age and wife was 44. Husband has been a farmer for most of his adult life, and at the time of the marriage he owned substantial business and real estate holdings. Those holdings included the Mission Nut Company, the Mission Cherry Company, a farm, a residence, a large tract of land known as the "bayou property" and commercial buildings in Salem and Wilsonville. The building in Wilsonville contained a hardware store business and related machinery and equipment, all of which husband owned before the parties' marriage. The trial court determined that husband's net worth at the time of the marriage was in excess of $3.5 million.

Wife brought into the marriage a car and some personal items. Before the marriage, wife had worked as a clerk at a local bank and completed a variety of classes at Chemeketa Community College. At the time of the marriage, she was working as a manicurist and her principal source of income was from the sale of stocks given to her by her mother.

During the first year of marriage, wife did a "limited quantity" of work as a manicurist. She also worked for no more than four months as manager of husband's hardware store. She was not paid for her services. According to husband, the parties had an agreement:

> "[T]here was no income generated from the store. And the agreement, if she would go ahead and run the store, [was] that she could eventually end up with the store. And that was left that way. So as soon as the store would be making a profit, there would be some consideration for wages or whatever at that time."

In November 1991, wife stopped working at the hardware store. She took approximately $5,000 from the hardware business account. About $1,500 of that money was spent on legal fees and, according to wife, the remainder was returned.

Wife also worked between 45 hours and 70 hours during one hazelnut harvest and was paid for that work. She worked between 10 hours and 50 hours during a cherry harvest and was not paid for that work. In addition, wife was "responsible for entertaining with and providing refreshments for the farmers when they're waiting to — [she] was supposed to bring out something cold for them to drink when [she] came out while they were waiting to be unloaded." She testified that she did that during one year. In addition, she helped maintain the yard around the family home, and she did an unspecified amount of cooking, laundry and "errands" over an unspecified number of months.

Wife's name was not placed on any of husband's property, and she did not contribute any of her separate monies to the upkeep or improvement of the businesses, equipment and properties that husband brought into the marriage. Throughout the marriage, husband kept all of his accounts separate from wife's, with the exception of one joint checking account used solely by wife. Into that joint account, husband would typically deposit $550 a month, which wife used for groceries, clothing and incidental expenses. The home mortgage and all improvements, repairs and utilities were paid for by husband from his separate accounts.

The parties separated for a week in August 1991 and again for two months beginning in late 1991. Their final separation occurred in early 1993, and husband filed for dissolution of the marriage in February 1993. After a hearing, the trial court concluded that the financial affairs of the parties had not been commingled, that the parties could be easily restored to their premarital financial positions and that the property division should be in the nature of a rescission "notwithstanding whatever appreciation occurred in the assets." Accordingly, the court awarded wife the property she brought into the marriage and six months of spousal support at $1,750 per month. Wife also was awarded most of the personal property jointly acquired during the marriage, with an approximate value of $17,250. The trial court awarded husband all of the interest in the assets that he had brought into the marriage.

On appeal, wife assigns error to that division of property. Wife argues that she should have been awarded a

share of the appreciation in the assets that husband brought into the marriage. She argues that application of the "rescission method" without regard to ORS 107.105(1)(f) is improper, because it "avoids proper recognition of the efforts of a spouse as a homemaker," and "skirts the presumption of equal contribution." Husband contends that it was proper to apply the rescission method to the appreciation of assets brought into the marriage by husband, because the parties' financial affairs have not been commingled and the parties can be easily restored to their premarital positions.[1]

■■■■ To determine whether wife is entitled to share in the appreciation of assets that husband brought into the marriage, we begin with ORS 107.105(1)(f), which provides:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. * * * The present value of, and income resulting from, the future enhanced earning capacity of either party shall be considered as property. The presumption of equal contribution to the acquisition of marital property, however, shall not apply to enhanced earning capacity."[2]

---

[1] After they were married, the parties drafted a handwritten "Antenuptial Agreement," which provides, in part:

"Properties and assets owned previous to the marriage by [husband] or [wife] shall remain theirs as well as any properties obtained by inheritance or gifts after the marriage.

"All acquisitions after the completion of the marriage shall be jointly owned."

Neither party argues that this agreement controls the resolution of this issue, nor did they below.

[2] The 1995 amendments to ORS 107.105 do not affect the outcome of this case. *See* Or Laws 1995, ch 22, § 1; Or Laws 1995, ch 608, § 3.

In construing ORS 107.105(1)(f), we first examine its text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We also examine, at the first level of our interpretive analysis, prior judicial construction of the statute. *Liberty Northwest Ins. Corp. v. Koitzch*, 135 Or App 524, 526, 899 P2d 724 (1995). If that inquiry does not clearly reveal the legislature's intentions, we look also to the legislative history of the statute. *PGE*, 317 Or at 610-12.

The question in this case is whether the trial court erred in applying the rescission method without regard to the presumption that wife had contributed equally to the acquisition of the marital appreciation of the home and businesses. More precisely, we must decide whether appreciation is "property" and, if so, whether that property was "acquired" during the parties' marriage and is therefore subject to the presumption of equal contribution.[3] We conclude that it is.

The text of ORS 107.105(1)(f) states that there is "a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage." By its terms, the presumption of equal contribution applies to all "property" that is "acquired" during marriage. "Property" is commonly understood to mean

> "something that is or may be owned or possessed: WEALTH * * * the exclusive right to possess, enjoy, and dispose of a thing: a valuable right or interest primarily a source or element of wealth: OWNERSHIP * * *."

*Webster's Third New International Dictionary* 1818 (unabridged ed 1976). "Acquire" generally means

> "**1:** to come into possession, control, or power of disposal of often by some uncertain or unspecified means <had accumulated for her about as much money as she had herself *acquired* — Arnold Bennett> **2:** to come to have as a characteristic, attribute, trait or ability often by sustained effort[.]"

---

[3] The concurrence, for reasons unexplained, narrows its phrasing of the issue to whether the legislature intended that the statutory presumption apply to "passive" appreciation of property brought into the marriage. 138 Or App at 601. Suffice it to say that we have previously rejected the distinction between "active" and "passive" growth in property values in applying ORS 107.105(1)(f). *Crislip and Crislip*, 86 Or App 146, 150-51, 738 P2d 602 (1987) ("[t]hat distinction has no support in our cases and would produce unnecessary complications if we were to adopt it").

*Id.* at 18. (Boldface and italics in original.) Certainly, appreciation is wealth, or at least an element of wealth, that can be controlled or disposed of. And, just as clearly, appreciation that takes place during marriage is "acquired" during marriage; a person "gains," "attains" or "come[s] into * * * control, or power of disposal" over the increased value of an appreciated asset as that asset appreciates. If that appreciation takes place during the marriage, it is acquired during the marriage.

■     We are mindful that dictionary definitions do not necessarily reflect the legislature's intentions. *See Brian v. Oregon Government Ethics Commission*, 320 Or 676, 684-89, 891 P2d 649 (1995); *State v. Holloway*, 138 Or App 260, 265, 908 P2d 324 (1995). Accordingly, we examine whether the statutory context in which the words are used demonstrates that the legislature intended the terms "property" and "acquired" to be given what we understand to be their ordinary meanings.

ORS 107.105(1)(f) states that a "retirement plan or pension or an interest therein shall be considered as property." Retirement plans and pensions increase in value, or appreciate, throughout their existence, and the "value" of such an increase is "property" within the meaning of ORS 107.105(1)(f), regardless of when the plan originally vested. *Richardson and Richardson*, 307 Or 370, 377, 769 P2d 179 (1989). To the extent that the increase in value accrues during marriage, it is "acquired" during marriage. As such, it is subject to the presumption of equal contribution. *Id.*

Similarly, ORS 107.105(1)(f) requires that the "present value of, and income resulting from, the future enhanced earning capacity of either party shall be considered as property." It is noteworthy that the legislature has explicitly mandated that the "income" from future enhanced earning capacity is to be considered as property. It would make little sense to treat income from an asset as property but not appreciation of that asset. As one leading commentator has observed:

"[T]he difference between income and appreciation is a matter of pure form which has no relation to the policies behind equitable distribution. * * * Income and appreciation are fundamentally similar, as they are both ways in which old

property generates new value. The only difference between the two concepts is a difference of form: income takes the form of a new asset, while appreciation takes the form of added value to an old asset. Because income and appreciation differ only in form, any attempt to distinguish between the two must inevitably partake of form rather than substance."

Brett Turner, *Equitable Distribution of Property* 225-26 (2d ed 1994); *see also* Barth Goldberg, *Valuation of Divorce Assets* 62 (1994 Supp) (characterizing the distinction between income and appreciation as "splitting hairs").

■ Indeed, the provision plainly requires that the enhancement of earning capacity itself be treated as "property." Although it is specifically excepted from the presumption of equal contribution, the appreciation of that asset is nevertheless statutorily treated as "property." If we are to avoid treating the same word differently in the same section of the statute, we must recognize that "property" is to be construed broadly and that it includes the enhanced value of other assets as well, even where the title or possessory interest in those assets may have been obtained before the marriage. In sum, the text and context of ORS 107.105(1)(f) indicate that appreciation is property and, to the extent that it occurs during marriage, it is acquired during the marriage. Accordingly, it is subject to the presumption of equal contribution, regardless of who brought the property into the marriage.

That reading of the statute is consistent with our prior case law concerning the statutory presumption. Our decision in *Kampmann and Kampmann*, 108 Or App 407, 816 P2d 642, *mod on other grounds*, 110 Or App 100, 820 P2d 1379 (1991), is illustrative. In that case, the husband brought into the marriage a number of parcels of real property, which appreciated during the parties' eight-year marriage. The trial court awarded the wife half of the increase in value of the property during the marriage. On appeal, the husband argued that, because of the relatively short-term duration of the marriage, the court should place the parties in the financial position they would have occupied had no marriage occurred; in other words, the trial court should not have awarded the wife any of the appreciation in the value of the real estate that the husband had brought into the marriage. We rejected the husband's argument:

"As a general rule, both spouses are entitled to share in any increase in value of marital assets that occurs during the marriage, ORS 107.105(1)(f); *see Card and Card*, 60 Or App 117, 120, 652 P2d 866 (1982), even if one spouse was the source of all of the parties' assets at the beginning of the marriage."

*Id.* at 410; *see also Carlacio v. Gebrayel*, 121 Or App 329, 335, 854 P2d 981 (1993); *Langan and Langan*, 89 Or App 320, 326, 748 P2d 1035, *rev den* 305 Or 433 (1988); *Olinger and Olinger*, 75 Or App 351, 354-55, 707 P2d 64, *rev den* 300 Or 367 (1985); *Caverly and Caverly*, 65 Or App 98, 101, 670 P2d 199, *rev den* 296 Or 236 (1983).

The concurrence argues that our reading of the statute is contrary to *Pierson and Pierson*, 294 Or 117, 653 P2d 1258 (1982), and *Engle and Engle*, 293 Or 207, 646 P2d 20 (1982), in which the Supreme Court held that the presumption of equal contribution does not apply to assets brought into the marriage by either party. The concurrence's argument, however, merely begs the question by *assuming* that an increase in the value of such property during the marriage is not an asset that was acquired during the marriage. Neither *Pierson* nor *Engle* said anything about that.

The concurrence and husband argue that our decision that the presumption applies to increases in the value of property brought into a marriage also cannot be reconciled with the straightforward application of the "rescission rule" in *Miller and Miller*, 294 Or 660, 661 P2d 1361 (1983), and *Rolie and Kunkel*, 127 Or App 428, 873 P2d 397 (1994). Both the concurrence and husband misunderstand the relationship between the presumption of equal contribution and the so-called "rescission rule."

The rescission rule originated in our decision in *York and York*, 30 Or App 937, 569 P2d 32 (1977), which predated the adoption of the statutory presumption contained in ORS 107.105(1)(f). In that case, the husband had brought into the two-year marriage a number of assets, the value of which had not substantially increased during that time. We held that,

"[w]hile both parties should share in the increase in value of marital assets, the general approach in dividing property after a short-term marriage is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place."

30 Or App at 939. (Citations omitted.)

In *Miller*, which was decided after the enactment of the statutory presumption, the parties disputed whether the increase in value of certain assets that the wife brought into their five-year marriage should be shared with the husband. The court cited *York* with approval, and held that, on the facts of that case, it was best to put the parties in the financial position that they would have held had no marriage taken place. The court expressly avoided any discussion of the statutory presumption. It acknowledged that "there may have been and probably were increases in the value" of the assets wife brought into the marriage and that "any appreciation in value is arguably a 'marital asset.' " *Miller*, 294 Or at 665-66. It nevertheless held that, on the facts of that particular case, it was appropriate to adopt a rescission approach and that that decision "eliminates the necessity of addressing" the issue of whether the presumption applied. *Id.* at 666.

Thus, *Miller* stands for the unremarkable proposition that, regardless of whether the presumption applies, in some cases the facts may be such that it is nevertheless appropriate to refuse to divide an increase in the value of property brought into a marriage. *See, e.g., Pugh and Pugh*, 138 Or App 63, 71 n 5, 906 P2d 829 (1995) (although the presumption of equal contribution applies, and has not been rebutted, property remains subject to equitable distribution by the court under ORS 107.105(1)(f)). There is nothing in our reading of the statute that is inconsistent with *Miller*.[4]

*Rolie* does contain language that is at odds with our current and prior construction of ORS 107.105(1)(f). In that case, the parties each brought substantial personal property into their marriage. The husband also brought into the marriage real property. During the marriage, the parties combined their efforts to improve the real property and used the proceeds from its sale to purchase a new home. They kept their personal property separate. We held that, because the parties had "commingled their contributions regarding the

---

[4] Moreover, the concurrence's reading of *Miller* makes no sense; if the presumption was effectively preempted by the rescission rule, then the court had no reason to suggest that the parties' property likely increased in value during the marriage and that that increase arguably was an asset subject to the statutory presumption.

real properties," and because the statutory presumption of ORS 107.105(1)(f) had not been rebutted, the wife was entitled to half the appreciated value of the real property. 127 Or App at 432. But as to the appreciation in the value of the personal property, we held:

"Under the holding in *Miller*, the appreciation of each asset follows the asset and accrues to its restored owner *without regard to ORS 107.105(1)(f)*."

127 Or App at 434. (Emphasis supplied.) That statement was incorrect and cannot be reconciled with either ORS 107.105(1)(f) or the cases construing it. To the extent that *Rolie* suggests that the statutory presumption of equal contribution does not apply to appreciation in the value of property brought into a marriage, the case is overruled.

■      We conclude, then, that the statutory presumption of equal contribution applies, and we turn our attention to whether that presumption has been rebutted. In *Stice and Stice*, 308 Or 316, 779 P2d 1020 (1989), the Supreme Court explained that

"[t]he presumption of equal contribution to the acquisition of property during the marriage may be overcome by a finding that the property was acquired by one spouse uninfluenced directly or indirectly by the other spouse, *i.e.*, the other spouse contributed neither economically nor otherwise to the acquisition of the property in issue."

*Id.* at 325-26. In this case, the record shows that any appreciation in the value of the property that husband brought into the marriage occurred without wife's influence, direct or indirect. The businesses, real property and equipment have always been in husband's name alone. All business accounts have been kept separate from wife, and wife had no power to draw funds from them. Husband made all financial contributions to the maintenance, operation and improvement of the businesses, and he alone was responsible for and paid all debts that were incurred in operating them. Husband alone was responsible for managing the businesses.

Wife did briefly work as a manager of husband's hardware store. She also worked for approximately one week on a single hazelnut harvest. She occasionally did "errands." And she provided refreshments to visiting farmers one season

as they unloaded their crops. The record shows that, apart from those isolated instances of assistance, wife did not regularly contribute to the operation of the business or in any other way directly or indirectly contributed to the appreciation in the value of the assets at issue.

We conclude that evidence of the clearly maintained separation of husband's business, real estate and equipment assets from the balance of the parties' property, as well as the evidence of husband's sole purchase, maintenance, operation and improvement of those assets, is sufficient to demonstrate that any increase in the value of those assets that occurred during the marriage did not occur through the direct or indirect contributions of wife. Wife's contributions, if any, were too brief and too sporadic to have had any significant effect on any appreciation that may have occurred.

Wife insists that this case is controlled by our decision in *Olinger*, in which we determined that the presumption of equal contribution had not been overcome. In that case, however, we concluded that the parties had "clearly commingled their financial affairs," that both parties had contributed to the down payment of the family home and one of the family businesses, and that the wife had "contributed her full-time earning to the [parties'] joint account." 75 Or App at 355. That is not so in this case, because none of husband's businesses or properties were commingled and wife made no contributions to them. Based on the record before us, therefore, we conclude that the presumption of equal contribution has been rebutted.

■ Finally, we examine whether, even though the presumption of equal contribution has been rebutted, the trial court's distribution of property was just and proper under all the circumstances. *Stice*, 308 Or at 326. Because of the short duration of the marriage, because husband's assets were so clearly separated from the balance of the parties' property and because of wife's relatively insignificant contributions to any increase in the value of husband's assets during the marriage, we conclude that the trial court's decision not to award wife a portion of those assets was just and proper.[5]

---

[5] In the light of our disposition, we need not determine whether husband's assets actually increased in value during the parties' marriage.

Affirmed. Costs, not including attorney fees, to husband.

**EDMONDS, J.,** concurring.

The majority concludes from the text and the context of the statute that the phrase "acquisition of property during the marriage" in ORS 107.105(1)(f) encompasses the appreciation of nonmarital property under the circumstances of this case. This results in the increases in the value of nonmarital assets being considered as marital assets subject to the statutory presumption of equal contribution even though the assets themselves are not subject to the statute. I submit for the reasons that follow that that result is inconsistent with the language of the statute and the legislature's intent.

The issue in this case is very narrow. This is a two-year marriage in which husband brought into the marriage his business and personal assets having a net worth of between $3,000,000 and $4,000,000. During the marriage, those assets may have appreciated in value. Wife seeks to share in the appreciation. Regarding the assets in issue, husband did not commingle them with wife's assets nor did wife contribute to the purported appreciation in a tangible or intangible way. The appreciation accrued because of husband's efforts and the nature of the assets themselves. For purposes of this discussion, I will describe the appreciation in this case as "passive" appreciation.[1]

The issue is one of statutory interpretation and turns on what the legislature intended. ORS 174.020. In the

---

[1] An example of so-called "passive appreciation" is when a spouse brings into the marriage an asset that accrues interest during the marriage without any contribution or use by the nonowner spouse or any commingling with marital assets. The majority, relying on *Crislip and Crislip*, 86 Or App 146, 738 P2d 602 (1987), takes issue with my use of the word "passive." In *Crislip*, the parties placed all of their income, including that from their pre-marital property, in joint accounts and used it for family expenses, although the pre-marital property was kept in their separate names. We held that, under those facts, the wife's contribution as a homemaker was presumed to be equal to the husband's whether the increase was the result of new investment or of earnings on previous investments. The issue here is different. Wife argues that even when the court takes a " 'rescission' approach to property settlement, it should nevertheless treat the increase in assets during the marriage as joint property and recognize the interests of both parties in this accumulation." In other words, wife contends the statute is applicable to the increase in value of nonmarital assets despite the fact that they were not used by the parties for joint purposes or commingled in any respect.

first level of analysis, the text and context of the statute are the best evidence of the legislature's intent. If the intent is not clear from the language of the statute, then we are to turn to the underlying legislative history to determine legislative intent. ORS 107.105(1)(f) provides in pertinent part, "There is a rebuttable presumption that both spouses have contributed to the acquisition of property during the marriage, whether such property is jointly or separately held." The word "property" could mean the increase in the value of the kind of assets that are the subject of this case as the majority suggests. However, the preceding sentence in the statute refers to the "acquisition of marital assets." If the word "property" in the statute means "marital assets," than the majority's reasoning in this case is dubious because the evidence is clear that the assets in question are nonmarital assets.

Moreover, the majority's interpretation conceptualizes the appreciation of nonmarital assets as existing separate from the assets themselves. That must mean that for purposes of the statute, nonmarital assets that appreciate in value during a marriage become divisible and somehow acquire dual status as marital and nonmarital assets. Such a division is at odds with the common understanding of the meaning of the words "property" and "assets" and ordinary accounting procedures. An asset in accounting terms refers to an entry on a balance sheet as in "assets and liabilities." During an accounting period, the asset may increase or decrease in value, but the changes in value do not create a different asset or item of property. In the context of a dissolution proceeding, the use of the word "asset" in the statute has significance because the court is required to undertake an accounting-type process tempered by principles of equity when it allocates the marital and nonmarital assets between the parties, taking into account their indebtedness. The fact that assets appreciate during a marriage reflects a change in value, not a division of the asset into nonmarital and marital parts. All of this is to say that when the statute is read in context, it cannot reasonably be said that the meaning of the statute as it applies to the facts here is so clear that doubt is precluded about what the legislature intended. Moreover, although the majority relies on various definitions of the word "property," none of those definitions focuses on what

the Oregon Legislature intended specifically regarding the language in ORS 107.105(1)(f).

The ambiguity of the statute requires a further inquiry. The original provision governing the division of property in the dissolution of marriage was *former* ORS 107.105(1)(e) which provided that the court had the authority to enter a judgment:

> "For the division or other disposition between the parties of the real or personal property, or both, or either or both of the parties as may be just and proper in all of the circumstances."

In 1977, the legislature added to the statute:

> "The court shall view the contribution of the spouse as a homemaker in the contribution of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage." Or Laws 1977, ch 847, § 2.

During the 1981 legislative session, we decided *Engle and Engle*, 52 Or App 561, 629 P2d 397, *rev'd* 293 Or 207 (1982). In *Engle* we held that under Oregon law, separately owned appreciated property of a party in a dissolution of marriage proceeding acquired during the marriage, if transferred by the dissolution judgment, would likely result in tax consequences to the transferor, and that therefore, those consequences should be considered in making an equitable distribution. We held that the then legal effect of *former* ORS 107.105(1)(e) was to create a mere equitable interest in the homemaker in assets acquired during the marriage, whether or not jointly owned. 52 Or App at 576. The legislature responded by amending the statute to provide that "the rights of the parties in the marital assets shall be considered a species of co-ownership," and that a transfer of marital assets pursuant to a dissolution judgment "shall be considered a partitioning of jointly owned property." Or Laws 1981, ch 775, § 1.

The Supreme Court took review of our decision in *Engle and Engle*, 293 Or 207, 646 P2d 20 (1982), and considered the effect of the 1977 amendment on the statute.

> "The first sentence of the amendment uses the phrase 'the contribution of marital assets' and the second sentence of the amendment speaks of 'the acquisition of property during

their marriage.' Although there may be some question whether property received during the marriage by a spouse by way of gift or inheritance is intended to be included with either phrase (a question which we need not and do not decide in this case), there is no doubt *that both phrases intended to include most other property acquired by one or both spouses during the marriage.* The amendment recognized the fact that nonearning spouses who maintain the home, do the cooking and cleaning and raise the children, *also contribute to the acquisition of property in a tangible, substantial way.* The result was the creation of the rebuttable presumption of an equal contribution. Thus, *when property is acquired with monies earned by a working spouse,* whether title is taken in the husband's name, the wife's name, or in both names, *the acquisition of the property* would be treated, at least presumptively, as having resulted from the efforts of the spouses. *As respects property so acquired,* the legislative history indicates that the meaning of the term 'marital assets,' contained in the second sentence of the term 'property' contained in the third sentence are identical." 293 Or at 214-15 (emphasis supplied; footnote omitted).

The court then held that the court-ordered transfer to the wife of the husband's separate assets acquired after their marriage constituted a partitioning of jointly held property. It reasoned that the term "marital assets" as used in the second sentence of the statute was intended to include the husband's stock acquired during the marriage.

The Supreme Court next considered the meaning of the phrase "acquisition of property during the marriage" in *Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982). In that case, the wife received an inheritance after the parties separated, but before their dissolution of marriage proceeding was filed. The husband argued that the inheritance should be considered a marital asset. The court held that it was a marital asset subject to the statutory rebuttable presumption of equal contribution. The court said:

"[T]he reference to 'acquisition of property during the marriage' indicates that it *includes neither assets brought into the marriage by either spouse* nor assets acquired by them after dissolution. The term 'real or personal property, or both, of either or both of the parties' in the first sentence describes a larger class of property than the term 'marital assets' because it can include property owned prior to the

marriage. The upshot is that property may be subject to the authority of the court to divide property, yet not be a marital asset." 294 Or at 121-22 (emphasis supplied).

It concluded that although the wife's inheritance was a marital asset, the presumption of equal contribution was rebutted.

In 1983, the legislature amended the statute resulting in subsection "(e)" becoming subsection "(f)." It also added another category of assets to the scope of the statute:

"A retirement plan or pension or an interest therein shall be considered property." Or Laws 1983, ch 728, § 2.

As the statute presently reads, it requires consideration of the contribution of a homemaker as a contribution "to the acquisition of marital assets." It also provides for a rebuttable presumption that both spouses have contributed equally "to the acquisition of property during the marriage."

In *Miller and Miller*, 294 Or 660, 661 P2d 1361 (1983), the court considered the appreciation in the value of a family residence during a five-year marriage. The parties had been married twice to each other. During their hiatus from marriage, husband had acquired a 23-acre parcel of land. The wife had been awarded the family residence and an adjoining acre of land by the first dissolution judgment. When the parties remarried, they resumed living in the family residence. The court ruled that "neither party's property is an 'acquisition of property during the marriage,' " and held that "this is a case where the property division should be in the nature of a rescission." 294 Or at 665. It then noted that "any appreciation in value is arguably a 'marital asset.' However, our decision here eliminates the necessity of addressing this issue." 294 Or at 666.

In resolving the issue of what the legislature intended, the case law interpreting the statute as well the legislative history must be considered. When the Supreme Court interprets a statute, that interpretation becomes a part of the statute as if it had been written into it at the time of enactment, *Walther v. SAIF*, 312 Or 147, 149, 817 P2d 292 (1991), and we are not free to disregard its interpretation. Here, the case law that has construed the meaning of the

statute is instructive as to the legislature's intent about the issue before us.

In *Pierson*, the court made it clear that the statutory presumption does not apply to assets brought into the marriage by either spouse or to "non-marital" assets. It is also clear that the word "property" in the language of the statute that affords a presumption of equal contribution refers only to marital assets. Thus, the majority's reasoning is only sustainable if it has correctly characterized the increases in the value of the nonmarital assets during the marriage as "marital assets." That characterization in turn must be consistent with the legislature's purpose in adopting the statute.

In *Pierson*, the court also said:

> "The statute has a two-fold purpose. First, the statutory presumption of equal contribution is based upon a legislative recognition that a non-employed, non-earning spouse contributes in other ways to the financial situation of the family and should be given the benefit of that contribution if a property division becomes necessary. * * *

> "Second, the ownership provisions were intended to obviate burdensome tax consequences which attach upon the transfer of an *asset* or a part of an *asset* from the legal owner to the other spouse pursuant to a property division. We conclude that the legislature intended to give the benefits of the presumption of contribution and tax avoidance *to all property acquired by either spouse during the marriage* regardless of the source of acquisition. Hence, we conclude that *property acquired by either spouse* during the marriage is within the term 'marital assets.'" 294 Or at 122 (emphasis added).

There is nothing in the legislative history or the case law that indicates that the legislature had in mind the division of nonmarital assets into marital and nonmarital assets simply because pre-marital assets accumulated value during a marriage. The legislature was concerned about providing for the recognition of legal interests of homemakers in assets acquired during the marriage that resulted from their contributions as homemakers, and the tax consequences of transfer that resulted from an adjudication of those interests. The majority opinion expands the reach of the statute to encompass passive appreciation of nonmarital assets, a stretch that

is beyond what the legislature contemplated and our authority as a court to interpret statutes. *See* ORS 174.010.[2] In effect, by its interpretation, the majority has stepped into the province of the legislature.

The majority makes two responses. First, it states, "the concurrence's argument, however, merely begs the question by *assuming* that an increase in the value of such property is not an asset that was acquired during the marriage. Neither *Pierson* nor *Engle* said anything about that." 138 Or App at 597. The majority misses the point. The opinions in *Pierson* and *Engle* tell us what the purposes were underlying the enactment of the statute. Because none of the assets in which wife claims an interest was a marital asset or was "acquired" during the marriage, the presumption is inapplicable. Moreover, because the legislature did not intend the presumption of equal contribution to apply to the increases in value of "non-acquired" assets, we should refrain from extending the reach of the statute beyond what the legislature intended. It is not a matter of begging the question, but of applying rules of statutory construction and leaving the making of law to the legislature.

Second, the majority responds by misunderstanding the import of the holding in *Miller* and overruling our holding in *Rolie and Kunkel*, 127 Or App 428, 873 P2d 397 (1994), which relies on *Miller*. In *Miller*, the court declined to apply the statutory presumption to the appreciation in value of nonmarital assets because it held that the property division in that case should be in the nature of a rescission. However, the majority states:

> "*Miller* stands for the unremarkable proposition that, *regardless* of whether the presumption applies, in some cases the facts may be such that it is nevertheless appropriate to refuse to divide an increase in the value of property brought in marriage." 138 Or App at 598 (emphasis supplied).

If, by that statement, the majority means that, in marriages of short duration, the courts are free to arbitrarily refuse to

---

[2] ORS 174.010 provides, in pertinent part:

"In the construction of a statute, the office of the judge is simply to ascertain what is, in terms or in substance, contained therein, not to assert what has been omitted * * *."

apply the statutory presumption to marital assets, such a construction contravenes the express language of the statute that "the court *shall* consider the contribution of a spouse as a homemaker as a contribution to the acquisition of *marital assets*." (Emphasis supplied.)

If, on the other hand, the majority means that the *Miller* court first considered the presumption of equal contribution regarding the appreciation during the marriage of the nonmarital assets, and after taking into account the wife's contribution as a homemaker, decided not to divide the increases, the text of the opinion does not support that reading. Moreover, that interpretation is inconsistent with the text of the opinion. The opinion sets out the applicable version of the statute *verbatim* including the language about the presumption of equal contribution. Then, it describes the property in issue and concludes, "neither party's property is an 'acquisition of property' during the marriage." 294 Or at 665. Thereafter, there is no mention of the presumption of equal contribution. The court states:

> "Our task is to insure a property division that is 'just and proper' in all the circumstances. * * * We think this is a case where the property division should be in the nature of a rescission. * * * Our decision here *eliminates* the necessity of addressing [whether the presumption of equal contribution applies to the appreciation in value of the assets during the marriage]." *Id.* at 665-66 (emphasis supplied).

In the light of the language of the statute, the Supreme Court's rationale is only supportable if it is understood to hold that the remedy of rescission was available because the statute was not implicated in the absence of the acquisition of marital assets.

In this case involving a two-year marriage in which there was no commingling of the assets in dispute and no evidence of contribution by wife, we should follow the holding in *Miller* and our holding in *Rolie and Kunkel*. Aside from the problem of extending the scope of the statute beyond the contemplation of the legislature, the majority's reasoning does not make good policy. The statute was enacted to reflect a homemaker's intangible contributions to the acquisition of marital assets. The majority's rule forsakes that policy and provides for a rebuttable interest in nonmarital assets to

which there has been no contribution. In other words, the noncontributing spouse gets something for nothing unless the owner is able to overcome the presumption. This effect violates the legislature's mandate that property divisions under ORS 107.105(1)(f) be "just and proper in all the circumstances." Traditionally, the law places the burden of demonstrating an entitlement to a property interest on the proponent of the claim. The majority's rule departs from that tradition. There is no equity in placing the burden on an owner spouse to overcome the presumption of equal contribution in the increase in value of a nonmarital asset when there has been no commingling of the asset or its income with marital assets or no contribution from the nonowner spouse.

For these reasons, I concur with the majority's result, but not its interpretation that the presumption of equal contribution applies to the facts of this case.

Warren, J., joins in this concurrence.