Argued and submitted March 25, affirmed as modified August 21, appellant's motion for reconsideration allowed by opinion December 4, 1991

See 110 Or App 100, 820 P2d 1379 (1991)

In the Matter of the Marriage of

Lisa Carol KAMPMANN,
*Respondent,*

*and*

Shawn Evans KAMPMANN,
*Appellant.*

(89-2747-D-3; CA A65071)

816 P2d 642

G. Philip Arnold, Ashland, argued the cause for appellant. With him on the brief was Drescher & Arnold, Ashland.

Patricia Crain, Medford, argued the cause for respondent. With her on the brief was Crain & Austin, Medford.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

In this dissolution case, husband appeals the trial court's valuation and division of property. On *de novo* review, we modify the judgment and affirm it as modified.

In 1978, husband and two friends, the Barhams, bought 122 acres of forest land, the Greensprings property, for $50,000. Husband paid $25,000 for his half interest, $10,000 of which he borrowed from his mother. Husband and wife began living together in 1980. He continued to make payments on the Greensprings property. They did not commingle their funds until after they married in June, 1983. From then on, husband and wife paid the property taxes and the payments on the Greensprings property out of their joint checking account. In September, 1988, husband and wife separated their financial affairs and opened individual checking accounts; husband resumed sole responsibility for the Greensprings property loan payments. They continued to share living expenses and expenses for their two children, and both remained in the family home until May, 1989, when husband left to work in Alaska for several months. After he left, he mailed wife $250 per month for half of the home mortgage payment until she filed for dissolution in August.

The court awarded wife the family residence, valued at $94,400, subject to a mortgage of $57,000, and a judgment for $15,900 for "property equalization." It awarded husband the parties' interest in the Greensprings property and, relying on wife's expert's testimony that the fair market value of the property was $175,000, valued that interest at $56,223. The court concluded that wife was entitled to share equally in the increase in value of that property from the date of husband's purchase in 1978 through 1990, the date of dissolution.

Husband first asserts that, because this was a short-term marriage, the court should have placed the parties in the financial position they would have been in if no marriage had occurred. As we have recently said:

"[L]abeling marriages as short-term or long-term depending on the duration of the relationship and then subjecting each category to different rules is not appropriate. Instead, property should be distributed between the parties in a manner

that is 'just and proper in all the circumstances,' as provided in ORS 107.105(1)(f)." *Dull and Dull,* 104 Or App 275, 278, 800 P2d 306 (1990). (Citations omitted.)

As a general rule, both spouses are entitled to share in any increase in value of marital assets that occurs during the marriage, ORS 107.105(1)(f); *see Card and Card,* 60 Or App 117, 120, 652 P2d 866 (1982), even if one spouse was the source of all of the parties' assets at the beginning of the marriage. *Caverly and Caverly,* 65 Or App 98, 101, 670 P2d 199, *rev den* 296 Or 236 (1983).

■■ Husband next contends that the court incorrectly valued his interest in the Greensprings property. He makes two arguments. First, he contends that the value of his interest should be determined under his "partnership" agreement, not by the fair market value of the property; second, he argues that the court erred in concluding that the total appreciation of the property from 1978 through 1990 should be divided between the parties as a marital asset.

We address husband's second argument first. He suggests that a fair distribution to wife is one-half of the increase in value of the property that occurred during the time that joint funds were expended on it, beginning when the parties married in June, 1983, and ending when they separated their checking accounts in September, 1988. Wife maintains that she should begin to share in the appreciation in the value of the Greensprings property from 1980, when the parties began cohabiting. Wife is correct that we generally consider whether the parties cohabited before marriage in determining the beginning of a relationship for the purposes of a property division. *See Burton and Burton,* 92 Or App 287, 289 n 2, 758 P2d 394 (1988). However, in this case, regardless of whose version of events more accurately describes the relationship during the cohabitation, both parties agree that they were *not* commingling their finances during that time. That is a critical fact, *see Hansen and Hansen,* 107 Or App 292, 812 P2d 6 (1991), and we are persuaded that, without evidence of mutual financial involvement and interdependence, the economic impact of the parties' living arrangement from 1980 through 1983 was more akin to a sharing of expenses than to marriage. We conclude that, because the parties did not commingle their financial affairs before the

marriage, wife is not entitled to share in the amount that the Greensprings property appreciated in value during that time.

■■ Husband argues next that wife should share in the property appreciation only up to September, 1988, when the parties separated their finances. He contends that the trial court should have considered that the increase in value of the property after the separation is his. Wife maintains that the ending date for valuing the appreciation of the Greensprings property should be the date of dissolution, May, 1990. Wife is correct. In order to have a marital asset acquired by one spouse after a separation treated as individually acquired, that spouse must rebut the presumption of equal contribution, ORS 107.105(1)(f), by showing that the other did not contribute, either directly or indirectly, to the acquisition or increase in value of that asset after separation. *Stice and Stice*, 308 Or 316, 325-26, 779 P2d 1020 (1989); *Thompson and Thompson*, 103 Or App 458, 461, 797 P2d 1077 (1990); *Olinger and Olinger*, 75 Or App 351, 354, 707 P2d 64, *rev den* 300 Or 367 (1985). Although the parties opened separate checking accounts in September, 1988, they remained financially involved, because they shared expenses for their children and other living expenses. They lived together until May, 1989, when husband left to work in Alaska, as he had done several times before, both during their cohabitation and during the marriage. After he left, he continued to make his share of the mortgage payments until August, when he received the dissolution papers. He did not rebut the statutory presumption of equal contribution to marital assets, and the trial court did not err when it valued the Greensprings property as of the date of dissolution.

Having established that the increase in value of the Greensprings property from when the parties married in 1983 through the date of dissolution in 1990 was subject to division, we turn to a determination of its value.

Husband argues that the trial court erred in valuing his interest in the Greensprings property at $56,223 on the basis of the fair market value of the property.[1] He contends

---

[1] The trial court apparently took wife's expert's figure for the current market value of the property, $175,000, subtracted the 1978 cost of $50,000, divided the $125,000 appreciation in half, $62,500, and then subtracted the balance on the loan to husband's mother, $6,277. The record is unclear why wife, in her trial memoran-

that his interest, and, therefore, wife's interest, is limited by the agreement with the Barhams that, should husband wish to transfer his interest in the property, he "must give first option to buy" to the Barhams.[2] Because of that preemptive provision, husband argues that the value of his interest is based on $55,000, the price at which the Barhams could exercise their option, not $87,500, half of the fair market value.

Wife argues that husband's agreement with the Barhams is void as an unreasonable restraint on alienation. *See Gange et ux. v. Hayes et al.,* 193 Or 51, 237 P2d 196 (1951); 5B Powell, *Law of Real Property,* § 842 (1989). Accordingly, she contends that it has no effect on the valuation of his interest in the Greensprings property.

■■ We need not decide whether the agreement is unenforceable between husband and the Barhams. Ordinarily, even when there is a right of first refusal on an option to buy property, we would start with the fair market value and then determine what discount should be applied because of the right of first refusal. *Belt and Belt,* 65 Or App 606, 610, 672 P2d 1205 (1983). However, unlike in *Belt,* there is no evidence in this record from either party about the discount that should be applied to the fair market value because of the agreement. Therefore, the only evidence that we have is about undiscounted fair market value. We cannot speculate what discount would be appropriate, even if the right of first refusal agreement is valid.

On this record, we agree with wife that the trial court properly used fair market value to determine husband's interest in the Greensprings property. The evidence shows that it was purchased in 1978 for $50,000[3] and that in May,

---

dum, or the court subtracted the debt to husband's mother, because that amount was already included in husband's $25,000 share of the purchase price.

[2] The agreement also provides that husband cannot transfer his interest to a third party without the Barhams' consent.

[3] We calculate the appreciation of the value of the property based on the 1978 purchase price of $50,000, as does husband in his brief, because there is no evidence in the record about its value in 1983 when the parties were married. At oral argument, counsel for wife acknowledged that the $50,000 figure was the only evidence available about the property's value during that time.

1990, the date of the dissolution, its fair market value was $175,000. Husband's 50 percent share of the appreciation is $62,500. Dividing that share by the 11-1/2 year period that he owned the property, we conclude that his interest appreciated approximately $5,434 per year on the acreage. Wife is entitled to half of that appreciation from 1983 to the date of the dissolution.

■      Husband's second assignment of error is that the court incorrectly valued the parties' home at $94,400, the figure provided by wife's expert. In this case of conflicting expert testimony, the court expressly found that wife's expert was the more credible. On *de novo* review, we give great weight to the trial court's opportunity to see and hear the witnesses. *See Martin v. Dillon,* 56 Or App 734, 739, 642 P2d 1209, *rev den* 293 Or 340 (1982). We find no reason to disturb its decision.

In husband's third assignment of error, he argues that the trial court should have determined valuations as of 1988, when the parties opened separate checking accounts. For the reasons explained above, the court properly made valuations as of the date of dissolution. *Olinger and Olinger, supra,* 75 Or App at 357.

Paragraph 12 of the judgment is modified to reduce wife's property division equalization award to $8,319; otherwise affirmed. No costs to either party.