Argued and submitted January 13, remanded in part with instructions; otherwise affirmed November 17, appellant's motion for reconsideration filed November 22, 1993, allowed by opinion January 5, 1994

See 125 Or App 621, 866 P2d 497 (1994)

In the Matter of the Marriage of

Priscilla A. TRUITT,
*Respondent,*

*and*

Richard R. TRUITT,
*Appellant.*

(C90-2226DR; CA A73628)

863 P2d 1287

Mark A. Johnson argued the cause for appellant. With him on the briefs was Gevurtz, Menashe, Hergert, Larson & Kurshner, P.C.

Carol G. Westendorf argued the cause for respondent. With her on the brief was Mason, Rowlette, McFarland & Westendorf.

Before Deits, Presiding Judge, and Durham and Landau, Judges.

DEITS, P. J.

**DEITS, P. J.**

Husband appeals from a judgment of dissolution. He argues that the trial court erred in disregarding the parties' agreed-upon visitation schedule, in setting the amount and duration of spousal support, and in distributing the marital estate. We modify the trial court's award of spousal support and affirm the dissolution judgment as modified.

Husband and wife were married for 15 years. During the marriage, they adopted three children. At the time of the dissolution, wife was 49, husband was 46, and the children were 19, 7 and 5. Husband is an engineer and manager with the Indian Health Services. His gross salary is $5,814 per month (approximately $4,800 net), and he receives housing and other tax-free employee benefits amounting to $11,500 per year. He also earns about $100 per month in interest income. Wife obtained a master's degree in social work in 1971, but has never been licensed as a social worker and does not have recent experience in that field. Wife's vocational expert testified that her master's degree is virtually useless because it is outdated and that it would be difficult for her to acquire the 3,000 hours of supervised work required to be licensed. For the past few years, wife has earned approximately $4,500 per year as a self-employed therapist. She also earns $3,250 annually in interest and dividends. That amounts to a gross income of approximately $638 per month.

The trial court awarded custody of the minor children to wife, ordered husband to pay $1,010 in child support, and set a visitation schedule. The court found that wife suffers from post traumatic stress disorder, allegedly resulting from husband's abuse, and that she is unemployable on a full-time basis because of her health. After considering wife's age, health, education, respective earning potential, and the ages of the minor children, the trial court awarded her $2,000 per month in indefinite spousal support.

■■ Husband first argues that the trial court erred in establishing a visitation schedule contrary to the parties' stipulation. However, the parties did not formally stipulate to the visitation schedule. Rather, both parties informed the court that they did not object to the visitation schedule established in the *pendente lite* order, except for the midweek

visits. Even if the parties had stipulated or agreed to a visitation schedule, the trial court is not bound by such agreements regarding the custody and visitation of minor children. *Rorer v. Rorer*, 10 Or App 479, 486, 500 P2d 734 (1972). Husband contends that the trial court should not have rejected the parties' agreed-upon visitation arrangement without taking evidence as to alternative arrangements. However, the changes made by the trial court in the visitation schedule were minor and were supported by the record. Under the trial court's visitation schedule, the amount of time that husband may spend with his children is virtually identical to that established by the *pendente lite* order. The trial court lengthened the duration of the visits and reduced the number of visits, ostensibly to foster more security in the children with less frequent changes in physical custody. As the trial court said in resolving the parties' dispute regarding visitations:

> "It is noted that the court has eliminated any midweek visitation, overnight or not. While there may be some merit to frequent contact between father and the children[,] there is also a down side. The midweek requirement is confusing, complex and causes many more problems than necessary. It fosters a sense of insecurity in the children."

We agree with the trial court's visitation schedule.

Husband also argues that the trial court erred in setting the amount and duration of spousal support. According to husband, the spousal and child support awards in combination are significantly more than one-half of his monthly "take home" pay. Husband also contends that the spousal support award fails to encourage wife to contribute to her own support. He asserts that the spousal support award should be reduced to $700 per month for the first year and $500 per month for four years thereafter.

■ ORS 107.105(1)(d) provides that support may be awarded in any amount and for a period of time that is "just and equitable for the other party to contribute." ORS 107.105(1)(d)(F) provides for an award of support to compensate a spouse who does not have suitable job opportunities because of age and the length of time reasonably anticipated to obtain training or updating of career or job skills. Additionally, under ORS 107.105(1)(d)(G), the trial court should

consider the number, age and health of the spouse's dependents. Here, wife is disabled and suitable full-time job opportunities likely are not available because of the amount of training required to update her career skills. In addition, wife has custody of two young children. Under these circumstances, we agree with the trial court that indefinite spousal support is appropriate. *See Helm and Helm*, 107 Or App 556, 813 P2d 52 (1991).

■ However, we agree with husband that the spousal support award of $2,000 is excessive. Husband's gross monthly income is $5,915. However, he is obligated to pay $1,010 per month in child support from which wife will benefit. *See Grove and Grove*, 280 Or 341, 344, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977). This obligation will continue for some time, because the children are fairly young. Wife's earning capacity is limited because of her current health problems. However, the evidence indicates that she now has the ability to work on a part-time basis and that, once she recovers from the stress of the divorce, her earning capacity may increase. In the light of the above considerations, we modify the indefinite spousal support award from $2,000 per month to $1,500 per month.

■ Husband next assigns as error the trial court's failure to account for the marital assets that wife allegedly dissipated without husband's consent while dissolution proceedings were pending. He argues that, under ORS 107.105(1)(f), each party must approve any substantial disposition of marital assets after filing for dissolution. Wife filed for dissolution on October 22, 1990. On January 14, 1991, *nunc pro tunc* December 3, 1990, the trial court entered a *pendente lite* order that, *inter alia,* restrained both parties from "making unavailable to the processes of the court any real or personal property * * * including but not limited to * * * bank accounts." Essentially, husband argues that wife's withdrawals from the Vanguard account violated the restraining order and ORS 107.105(1)(f). However, the restraining order expressly provided that: "The parties may make all expenditures from their respective joint checking accounts necessary for living expenses." Wife testified that she used money from the Vanguard account to improve the Arizona townhouse in order to sell it and for family living

expenses. We note that husband testified that he withdrew at least $5,000 from one bank account for "operating expenses." We presume that husband used the funds for living expenses. In *Howard and Howard*, 103 Or App 342, 349, 798 P2d 683 (1990), we said:

> "Under ORS 107.105(1)(f), parties *ought* to be entitled to approve or disapprove any substantial disposition of any marital assets held as a 'species of co-ownership.' When a transfer of marital assets has been made without the consent of the other spouse, the trial court may consider that in determining what is a 'just and proper' property division." (Emphasis supplied.)

In view of the fact that both parties were withdrawing funds for living expenses from bank accounts that were marital assets, and that the restraining order permitted them to do so, we find that the trial court did not err in its valuation of the Vanguard account at issue.[1]

■ Husband next assigns as error the trial court's valuation of his retirement assets. Husband argues that the trial court calculated the tax consequences of those assets without considering his income from non-retirement sources and that his federal pension most likely will be subject to Oregon's income tax because of an expected change in the law by the time that husband retires in seven years. Husband testified that he planned to find another job upon his retirement. Husband's expert used a 39.5% tax rate in calculating the tax consequences of his retirement accounts. According to husband's expert, if husband is employed after retirement earning $45,000 per year, with his federal retirement income of $32,000 and investment income of $8,000, and he becomes a resident of Oregon, and Oregon law changes so that his pension would be taxable, his effective tax-rate will be 39.5%. Husband presently resides in Alaska. Alaska currently does not have a state income tax. Husband did not say whether he planned to leave Alaska. Wife's expert testified that husband's current tax-rate is 28% and that is the rate that he used to calculate the tax consequences of husband's retirement accounts.

---

[1] We also note that husband did not begin to pay spousal support until January, 1991. Wife's withdrawals from the account at issue occurred prior to January, 1991.

ORS 107.105(2) authorizes the trial court to consider the tax consequences of husband's pension and IRA accounts when there is a "reasonable and supportable basis for making an informed judgment as to [the] probable liability." *Alexander and Alexander*, 87 Or App 259, 261, 742 P2d 63 (1987). We agree with the trial court's reliance on the testimony of wife's expert in calculating the tax consequences of husband's retirement accounts. The testimony of wife's expert provided a more supportable basis to calculate the tax consequences of the retirement funds than the testimony of husband's expert, whose estimates were based in part on speculation.

Husband's fifth assignment is that "the trial court erred in making its division of the parties' property." However, husband makes no arguments under this assignment of error that we have not already addressed in our dispositions of his previous assignments.

Remanded with instructions to modify judgment to award wife $1,500 per month indefinite spousal support effective from the date of entry of appellate judgment; otherwise affirmed. No costs to either party.