Argued and submitted January 31, remanded for entry of an amended judgment; otherwise affirmed on appeal and cross-appeal May 15, petition for review denied October 8, 1996 (324 Or 305)

In the Matter of the Marriage of

Clo EDWARDS,
*Appellant - Cross-Respondent,*

*and*

Leelan C. EDWARDS,
*Respondent - Cross-Appellant.*

(93C-30768; CA A86780)

917 P2d 504

Clayton C. Patrick argued the cause for appellant - cross-respondent. With him on the briefs was Patrick & Meadow-brook.

John L. Hemann argued the cause for respondent - cross-appellant. With him on the brief was Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Before Deits, Presiding Judge, and Landau and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Wife appeals from a dissolution judgment, challenging the trial court's award of spousal support and the property division. Husband cross-appeals, assigning error to the trial court's valuation of the parties' stock in the family business. We review *de novo*, ORS 19.125(3), and modify the judgment.

The parties were married in 1974. At the time of trial, husband was 59 years of age and wife was 60. The parties both had children from prior marriages. One of wife's children lived with and was partially supported by the parties for about four years. Husband began his involvement in the family funeral business in 1956. In 1958, a year after his father's partner died, he began to acquire stock in the business. At that time, there was one corporation that operated the business. In 1960, he began acquiring an interest in the real property on which the business is now located. In 1973, husband executed a purchase agreement with his parents to acquire an additional interest in the funeral business. That agreement provided for periodic payments to husband's parents.

Generally, the parties testified that part of husband's interest in the business was paid for before the marriage and part was paid for during the time of the marriage. The record does not disclose, however, how much was paid to husband's parents before the 1973 agreement, or when it was paid; nor does the evidence show how much husband paid under the 1973 agreement or when it was paid. Husband also testified that a portion of his indebtedness to his parents for the purchase of the business was forgiven. Again, there is no evidence as to how much of the debt was forgiven. However, husband testified that the forgiveness of the debt took place *after* the parties' marriage.

In 1981, husband and his business partner divided the business into two entities. One corporation included the funeral home, which was known as Howell-Edwards-Doerksen (HED). The other corporation, which owned the real property, was known as Doerksen-Edwards, Inc. (DE). HED rents the real property from DE. The parties' stock in both

corporations has never been in wife's name, only husband's. At the time of trial, he had a one-half interest in both corporations. Husband's income from the business from 1988 to 1993 averaged about $114,000 per year. At the time of trial, he was earning a gross income of $10,320 per month. In addition, the business provided the parties with other economic benefits. It paid annual bonuses and provided the parties' health and life insurance, as well as auto maintenance, repairs and gasoline, and cellular phones and telephone credit cards to husband and wife.

Wife has a high school education. From 1955 until 1981, she worked at a local dairy, principally as a bookkeeper. She was unable to continue to work at the dairy because of serious health problems resulting from an automobile accident in 1981. After the accident, wife obtained training in floral design and started a business doing floral work. Her income from those activities was minimal. She also started a business called the Paper Patch that did not succeed. The parties used wife's business losses as a tax writeoff. Wife did not regularly work in the family business, although she occasionally did makeup and hair work on cadavers and assisted husband with some of his professional activities, for example, serving as a hostess when he was president of the Funeral Directors Association and providing other volunteer services. Since the time of her injury, wife has not earned more than $2,000 per year. Wife was not working at the time of trial. She has a limited earning capacity due to her health problems which, according to her doctors, are not likely to improve, and due to her lack of training and experience in the job market.

At the time that they were married, husband had, in addition to his interest in the funeral business, a number of debts from his prior marriage. Those included a child support obligation for his three children, mortgage payments on a condominium and a debt of $43,000 resulting from a failed business in California. Wife's only significant debt at the time of the marriage was a car payment. At the beginning of the marriage, husband and wife deposited their salaries in separate bank accounts, although both contributed to family expenses, including payment of husband's prior debts. In addition, joint money was used to continue to purchase the

funeral business. After the accident in 1981, the parties maintained only a joint account and paid all of their expenses out of that account.

The trial court awarded husband the family business, as he requested. The court valued the parties' interest in the stock in HED at $475,000 and their interest in the stock in DE at $370,000. The trial court held that husband had rebutted the presumption of equal contribution with respect to the interest in the business. However, it concluded that because of wife's health problems, she was entitled to some interest in the business. Due to the lack of information regarding when and how much of husband's interest in the business was actually acquired in relation to the parties' marriage, the trial court used a coverture fraction to calculate the amount to which wife was entitled. With regard to the parties' interest in HED, the court used a fraction of 20/36, with 20 representing the years of the marriage and 36 as the number of years that husband had held an interest in the business. For the DE Corporation, the court used a fraction of 20/34, with the 34 representing the number of years that husband had held an interest in that corporation. The court multiplied the fractions by the amount of the parties' interest in the respective businesses, $475,000 and $370,000. Because the business was awarded to husband, the trial court then gave wife an equalizing judgment in the amount of $240,767.95, to be paid by husband by November 1, 2000. The judgment provides that the equalizing judgment shall not bear interest "provided respondent pays his spousal support obligation." The trial court also ordered that the family home be sold and that the proceeds of the sale be divided equally between the parties.

The trial court also awarded wife spousal support. The initial monthly support obligation was $3,800; $1,800 of that monthly obligation, however, represented interest at 9 percent per annum on the equalizing judgment. The $1,800 was to be paid by husband as part of the spousal support obligation until the equalizing judgment was satisfied. The judgment also stated that the $1,800 portion of the spousal support award, representing interest on the judgment, could not be modified. In addition, the judgment provided that the monthly spousal support obligation would be reduced by

$600 per month in September 1996, at which time wife would become eligible to receive social security benefits.

Wife assigns error to the property division, arguing that the trial court erred in a number of ways in dividing the parties' property. Wife first contends that the court erred in concluding that husband rebutted the presumption of equal contribution with respect to the parties' interest in the HED and CE corporations.

■ ORS 107.105(1)(f) provides that there is "a rebuttable presumption that both spouses have contributed equally ⁺ ⟩ the acquisition of property during the marriage." This presumption applies to all property acquired during the marriage, including appreciation on property brought into the marriage by one party. *Stice and Stice*, 308 Or 316, 779 P2d 1020 (1989); *Massee and Massee*, 138 Or App 589, 911 P2d 320 (1996). Accordingly, here, any part of the corporations acquired after the parties' marriage in 1974, as well as any appreciation in the value of the corporations that occurred during that time, is subject to the presumption. As we will discuss, a major problem here, in determining an appropriate division of the parties' property, is that it is unclear from the record what portion of the parties' interest in the corporation was acquired during the marriage and how much appreciation occurred during that time. However, before addressing that problem, we will first resolve whether the presumption of equal contribution was rebutted by husband.

■ In *Stice*, the Supreme Court explained the operation of the presumption of equal contribution:

> "[T]he presumption of equal contribution to the acquisition of property during the marriage may be overcome by a finding that the property was acquired by one spouse *uninfluenced directly or indirectly by the other spouse, i.e.*, the other spouse contributed neither economically nor otherwise to the acquisition of the property in issue." *Stice*, 308 Or at 325-26 (emphasis supplied).

In *Stice*, the court concluded that husband had not overcome the presumption. The court explained that although the disputed stock in that case had been acquired by wife's efforts alone during the marriage, other circumstances supported the presumption. The court pointed out that the parties'

financial affairs were commingled. Further, although the stock was held in her name, there was no agreement between husband and wife that the stock was wife's separate property. The court concluded that wife had been able to acquire the stock, at least in part, because of husband's financial support, due to the fact that both of their incomes were used to purchase marital assets, pay marital debts and support their standard of living.

We conclude here that husband failed to rebut the presumption of equal contribution. As noted above, in order for husband to overcome the presumption, he must show that he acquired the disputed property "uninfluenced directly or indirectly by the other spouse, *i.e.*, the other spouse contributed neither economically nor otherwise to the acquisition of the property in issue." *Id.* It is true, as husband contends, that wife's direct economic contribution to the acquisition of the business was limited. However, at least before her accident in 1981, wife was contributing economically to the parties' joint account that was used to pay for the parties' expenses, including the payment of husband's debts incurred before the marriage. That fund was also used to make any payments toward the purchase of the business that were made during that time period. Further, as noted above, wife also on occasion provided limited services for the business and assisted husband with his professional activities related to the business. More significantly, however, wife contributed indirectly to the acquisition and maintenance of the family business. Here, as in *Stice*, the parties' finances were commingled and the family business was the cornerstone of the parties' economic well-being. Wife's principal contribution to the family's economic well-being was in the role of homemaker. As provided in ORS 107.105(1)(f), we are to consider "the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets." Wife's role as a homemaker here occurred over a long period of time, 20 years. Under those circumstances, we cannot say that husband proved that the interest in the business, acquired during the marriage, was obtained "uninfluenced directly or indirectly" by wife.

We conclude that the presumption of equal contribution was not rebutted by husband and that wife is entitled

to one half of the parties' interest in the business that was acquired during the marriage as well as one half of the appreciation in the value of the business that occurred during the marriage. The difficulty presented here, however, is that the record does not establish how much of the business was acquired during the marriage or how much it appreciated during that time.

■       Wife argues that husband bears responsibility for the failure of proof on that question and that, for that reason, she should be given one half of the total value of the parties' interest in the business. We disagree. Our ultimate task is to divide the marital property, including separate property of the parties, in a manner that is "just and proper in all the circumstances." *Stice*, 308 Or at 326; *Richardson and Richardson*, 307 Or 370, 379-80, 769 P2d 179 (1989). We do not believe that, under the circumstances here, it would be just and equitable to award wife one half of the total value of the funeral business. Although the record is unclear as to the value of husband's interest in the business before the marriage, it is undisputed that husband began his involvement in the business in 1956, 18 years before the marriage, and that he did acquire *some* of his interest in the business before the marriage.

■       Husband asserts that it is undisputed that he owned one half of the stock in HED before the marriage, because his 1973 dissolution judgment recites that, at that time, he owned a one-half interest in HED. However, as wife points out, the prior judgment recites that he is the owner of a one-half interest "subject to encumbrances and/or pledges against the same." There is no evidence in this record as to what the encumbrances and pledges against husband's interest were at that time. Accordingly, the earlier judgment does not assist us in determining what husband owned at the time of this marriage. Similarly, the evidence that husband offers that, in 1973, a certificate of agreed value was issued stating that the value of all of the mortuary stock was $300,000 is of little assistance here. Even assuming that that is an accurate value, there is no evidence as to the extent of husband's interest at that time or how much of it was paid for.

As explained above, the trial court, facing this same problem, attempted to resolve the difficulty by using a coverture fraction to determine an appropriate property division. Wife is critical of this method, contending that it is inappropriate for a situation such as this, where we cannot assume, as we can with a pension, that regular contributions are made each year to the asset. Admittedly, this was an unusual method to use to determine the parties' interests in the disputed property. However, under these unusual circumstances, the method used by the trial court was not unreasonable and appears to have achieved an equitable division of the property. We agree with the trial court's valuation[1] and division of the marital property.

■ Wife also argues that the trial court erred in holding that husband did not have to pay the equalizing judgment until November 2000. We agree with wife that this delay in payment is not equitable under the circumstances here. We conclude that husband should pay one third of the $240,767.50, plus interest, by January 1, 1997; one third, plus interest, by January 1, 1999; and the remaining one third, plus interest, by January 1, 2001. As wife requests, in accordance with ORS 82.014, interest shall run on the judgment at a rate of 9 percent per annum from the date of the trial court judgment.

■ Wife also assigns error to the trial court's determination that husband and wife shall each receive one half of the proceeds of the sale of their house. However, in view of our decision that husband must pay the equalizing judgment earlier than ordered by the trial court, we believe that the trial court's disposition of the proceeds from the sale of the house was proper.

■■ Wife also assigns error to the trial court's award of spousal support, contending that it should be increased. In determining the appropriate amount of spousal support, we attempt to devise an award that is "just and equitable" under the circumstances. ORS 107.105(1)(d). In deciding on an

---

[1] Wife asserts that the parties' interest in the DE corporation should have been one-half of $750,000, the value husband used for this corporation. However, the trial court's use of $740,000 is supported by the evidence, in particular by the expert's appraisal.

appropriate spousal support award, we are required to consider a number of factors, none of which is dispositive, including the length of the marriage, the age and health of the parties, the number and age of the dependent children, the earning capacity of each party, the extent to which earning capacity may be impaired because of absences from the job market to attend to family needs and the respective financial circumstances of the parties. ORS 107.105(1)(d); *Phillips and Phillips*, 140 Or App 354, 914 P2d 1092 (1996). The purpose of a spousal support award is not to eliminate all disparities in the parties' incomes or to enable one party to look to the other for support, if self-support at a reasonable level is or will be possible. *Ley and Ley*, 133 Or App 138, 890 P2d 440 (1995). Our objective is to allow each party to "achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible." *Krutsinger and Krutsinger*, 140 Or App 215, 914 P2d 1096 (1996).

In this case, it is clear that husband's earning capacity is significantly greater than wife's. As discussed above, he is presently earning approximately $10,000 per month. Wife, on the other hand, has a very limited earning capacity due to her age, absence from the job market, lack of education and training and health problems. There is little likelihood that wife's earning capacity will increase significantly in the future. While, as noted above, our goal is not to equalize the parties' incomes, husband presently has the ability to pay a level of support that will allow wife to maintain a life style not overly disproportionate to the fairly high standard of living that the parties enjoyed during the marriage.

Husband argues that spousal support should not be increased because, although the trial court found that the presumption of equal contribution was rebutted, the court still awarded her a significant interest in the family business as a matter of equity. Husband seems to be arguing that wife was given more in the property division than she was technically entitled to and that we should consider that in awarding spousal support. However, as discussed above, it is our conclusion that the presumption of equal contribution was not rebutted and, accordingly, wife was entitled to the marital assets that she was awarded.

■ ■ In establishing the appropriate amount of spousal support, we first note that, as discussed above, ORS 82.010 requires that interest accrue at 9 percent per annum on the equalizing judgment and, as wife requests, we conclude that the judgment should be amended so to provide. Accordingly, the $1,800 of the spousal support award that was awarded in lieu of interest on the judgment, must be deleted from the spousal support award.[2] Deleting that portion of the support obligation representing interest, the award of support by the trial court was $2000 per month, decreasing by $600 in September 1996. We conclude that the award should be $2,800 per month. We agree that it is appropriate to reduce the award by $600 at the time that wife becomes eligible to receive social security benefits, September 1996.

Finally, wife argues that the trial court erred in denying her request for attorney fees. We conclude that the trial court did not abuse its discretion in denying wife's request for attorney fees. *Richardson*, 307 Or at 385.

■ Husband cross-appeals, arguing that the trial court erred in valuing his stock in DE. He contends that the court failed to take into account the indebtedness of that corporation. However, stock is generally valued by taking into account both the assets and liabilities of a corporation. Without evidence that this was not the case when this stock was appraised, there is no basis to reduce the value given for the stock.

On appeal and on cross-appeal, remanded for entry of amended judgment, modifying spousal support award to $2,800 per month, effective from date of trial court judgment, and $2,200 per month effective, September 1, 1996; modifying the equalizing judgment of $240,767.95 awarded to wife, one third, plus interest at 9 percent per annum beginning on date of trial court judgment, payable by January 1, 1997; one third, plus interest, payable by January 1, 1999; and the balance, plus interest, payable by January 1, 2001; otherwise affirmed. Costs to wife on appeal and on cross-appeal.

---

[2] Additionally, there appears to be no authority under the statute authorizing spousal support, ORS 107.105, for the court to include such interest in a spousal support award.