Argued and submitted March 15, 1996, affirmed March 25, 1998

In the Matter of the Marriage of

Vicki Jo DREWS,
*Appellant,*

*and*

Allan Charles DREWS,
*Respondent.*

(94-DO-1261DS; CA A89166)

956 P2d 246

Charles F. Lee argued the cause for appellant. With him on the brief was Lee & Kaser, P.C.

Inge Wells argued the cause for respondent. With her on the brief was Hutchinson, Anderson, Cox & Coons, P.C.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DEITS, C. J.

De Muniz, J., dissenting.

## DEITS, C. J.

Wife appeals from a dissolution judgment, assigning error to the trial court's valuation of the appreciation of husband's office building and to the trial court's discounting of the increased value of husband's retirement accounts for tax consequences. On *de novo* review, we affirm.

Husband and wife were married for nine years. At the time of trial, husband was 57, and wife was 43. Husband is a dentist and earns approximately $10,673 per month. Wife has worked as a dental hygienist but, at the time of trial, was working as a shingler at the rate of $6.50 per hour. The court found that wife had suffered a minor injury to her hand that might delay her return to work as a dental hygienist in the short term. However, the court also found that within a year wife would be able to earn $200 per day as a dental hygienist. The parties agreed before trial that husband would have custody of their two children, then ages seven and three.

The trial court awarded wife spousal support of $1,000 per month for one year and $600 per month thereafter for four years. Wife was ordered to pay child support of $332 per month for one year and, thereafter, $498 per month. In the property distribution, the trial court awarded wife a total of $5,269 in assets and husband $262,611. It then awarded wife an equalizing judgment of $128,265.

Wife's first assignment of error concerns the trial court's calculation of the increase in value during the marriage of the building where husband operates his dental business. Husband owned the building before the marriage. The professional corporation through which husband conducts his dental practice pays rent to husband for the office space. The building was built by husband in 1978. He financed the construction of the building through a loan, which he repaid two years before the marriage. A few months before the marriage, however, husband borrowed $80,000 to repay a debt that he had incurred in another business venture. He used the office building as collateral for that loan. At the time of the dissolution, the $80,000 debt had been paid off and the

building was no longer encumbered. Husband's expert testified that the building was worth $102,420 at the time of the marriage and about $120,000 at the time of the dissolution. The trial court included the increase of $17,636 in market value of the dental building that occurred during the marriage as a marital asset.

Wife contends that the trial court erred in using the difference in the market value of the office building at the time of the marriage and at the time of the dissolution in determining the value of the marital assets. She argues that the court should have calculated the increase in value during the marriage by subtracting what she characterizes as the equity in the building at the time of the marriage from the equity in the building at the time of dissolution. Wife's position is that the parties had an equity in the building of approximately $22,000 at the time of the marriage, due to the encumbrance for the $80,000 loan, and a value of about $120,000 at the time of dissolution, and that, therefore, the increase in value that should have been considered as a marital asset is approximately $98,000.

■ Despite the fact that husband owned the property before the marriage, there is no question that the increase in value of the building that occurred during the marriage is a marital asset in which wife is entitled to share; *Massee and Massee*, 138 Or App 589, 594, 911 P2d 320, *rev allowed* 323 Or 483 (1996); *Kampmann and Kampmann*, 108 Or App 407, 411, 816 P2d 642, *on recons* 110 Or App 100, 820 P2d 1379 (1991). The more difficult question here is whether satisfaction of the $80,000 loan that husband obtained before the marriage, for which he used the building as collateral, is relevant to the calculation of the value of the property at the time of the marriage for purposes of determining the increase in the value of the asset that took place during the marriage. We have not previously directly addressed this issue, and the answer is not entirely clear. However, as we will explain, it is unnecessary to resolve that question here. Even assuming that the increase in the value of the property during the marriage should include the $80,000, we conclude that, under the circumstances here, that additional equity should be awarded to husband.

■■    Husband argues that, even if the $80,000 loan must be used in calculating the value of the property at the time of the marriage and, consequently, in calculating the increase in the value of the assets during the marriage, he rebutted the presumption of wife's equal contribution to the increase in the equity in the property. ORS 107.105(1)(f) provides that there is a "rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage." Such property includes increases in the value of nonmarital assets that occur during a marriage. *Massee*, 138 Or App at 596, 599. This presumption may be overcome, however, by demonstrating that the other spouse did not economically or otherwise "directly or indirectly contribute[ ] to the appreciation in the value of the assets at issue." *Id*. at 600. In *Massee*, we concluded that the husband had rebutted the presumption of equal contribution by demonstrating that the wife did not regularly contribute to the businesses, aside from isolated instances of assistance:

> "The businesses, real property and equipment *have always been in husband's name alone*. All business accounts have been kept separate from wife, and wife had no power to draw funds from them. Husband made all financial contributions to the maintenance, operation and improvement of the businesses, and he alone was responsible for and paid all debts that were incurred in operating them. Husband was responsible for managing the businesses." *Id*. at 599. (Emphasis supplied.)

■    We do not agree with husband that the presumption was rebutted here. The evidence shows that the loan was paid off by applying rent payments received by husband's dental practice professional corporation to the loan debt each month, until the entire debt was satisfied. Although the extent of wife's interest in the professional corporation is not entirely clear, the evidence shows that wife was a shareholder in the corporation and, therefore, had some entitlement to the corporation's income. Husband acknowledged on cross-examination that wife was a shareholder in his professional corporation, but when asked "[h]ow is the stock ownership distributed?", husband responded "I'm not sure." The only specific evidence is in the corporation's income tax

return from 1991, which lists both husband and wife as officers in the corporation, yet indicates that husband owns 100 percent of the stock. The tax return also reflects that husband earned $93,957 in compensation from the corporation, while wife earned $7,249 in compensation in that same year. Based on the evidence in the record, we conclude that husband did not rebut the presumption of equal contribution.

On *de novo* review, however, our task is to divide marital property in a manner that is "just and equitable in the circumstances." *Stice and Stice*, 308 Or 316, 326, 779 P2d 1020 (1989). In most instances, that entails an equal division of the marital assets. We have recognized, however, that special circumstances may justify an unequal division of property. *Ahlawat and Pande*, 141 Or App 233, 237, 917 P2d 535 (1996); *Edwards and Edwards*, 141 Or App 11, 18, 917 P2d 504, *rev den* 324 Or 305 (1996); *Johnson and Johnson*, 138 Or App 462, 466, 909 P2d 185 (1996); *Pugh and Pugh*, 138 Or App 63, 72, 906 P2d 829 (1995), *rev den* 322 Or 644 (1996).

Here, husband had purchased and fully paid for the dental building before the marriage. Two months before the marriage, however, he obtained the $80,000 loan using the building as collateral, to pay off a debt that he had incurred in another business venture. Had husband waited until after the marriage to obtain the loan and then paid off that loan with income from his professional corporation during the time of the marriage, as he did, wife would have no basis to claim any portion of the $80,000. Under these circumstances, it seems inequitable to allow the fortuity of the timing and manner of husband's reduction of his debt to dictate the result.

The dissent contends that, because the $80,000 used to pay off the debt could have been used by the parties to acquire marital assets that wife would have shared an interest in, wife must now be given property that essentially represents her share of the $80,000 used to pay off the debt. That result, however, would require us to engage in the highly speculative assumption that the parties would have used the $80,000 to acquire assets that would still be marital assets at the time of the dissolution. The parties could just have likely used the money for travel or other purposes that would not

have resulted in additional marital assets at the time of dissolution. Under most circumstances, we do not consider the funds used to satisfy a debt during the marriage in determining the appropriate property distribution. We do not believe it is appropriate to do so here. We conclude that it is just and equitable that husband receive the $80,000 in increased equity in the dental building.

Wife's second assignment of error relates to the trial court's valuation of the parties' retirement accounts. The trial court also included as marital assets the increases in value of the parties' various retirement accounts that occurred during the marriage. They included husband's pension and profit sharing plan through his professional corporation and two separate individual retirement accounts (IRAs) and wife's two separate retirement accounts. The trial court discounted the increased value of wife's retirement accounts by 22 percent and husband's by 40 percent, in contemplation of future tax liability, before totaling the assets and entering the equalizing judgment.

■ Wife argues that the court erred in discounting the value of husband's retirement accounts by 40 percent for future income tax liability. She contends that was error, because husband's future tax liability is too speculative. ORS 107.105(2) specifically grants the trial court the authority to consider evidence of tax consequences when dividing marital property. We have stated that future income tax liability on retirement funds is a "virtual certainty." The critical question regarding this issue is at what rate the income will be taxed. *Alexander and Alexander*, 87 Or App 259, 261, 742 P2d 63 (1987). The calculation of that rate is wholly dependent on the evidence in the record showing whether taxation will occur and at what rate. *Colling and Colling*, 139 Or App 16, 23, 910 P2d 1165, *rev den* 324 Or 78, 921 P2d 967 (1996). *See also Truitt and Truitt*, 124 Or App 531, 537, 863 P2d 1287, *on recons* 125 Or App 621, 866 P2d 497 (1993) (relying on the expert testimony that provided the more supportable basis for calculating the tax consequences on retirement accounts).

■ In this case, husband's expert witness testified that he had examined husband's tax returns and that husband had a current federal tax rate of 31 percent and state tax rate

of nine percent. The witness' opinion was that the tax rate of individuals in economic circumstances similar to husband's typically remains the same upon retirement. The expert witness also testified that income from both the pension and profit sharing account and the IRAs would be taxable to husband upon retirement. Wife did not present any contradictory evidence, nor did she challenge the application of a 22 percent discount to her own retirement accounts. *See Cookson and Cookson*, 134 Or App 357, 363, 895 P2d 345 (1995) (determining that evidence in record supported application of a 34 percent discount rate to husband's pension to account for future income tax liability where there was no evidence to support the 20.5 percent discount rate used by court and where wife asserted that application of any discount rate was speculative). *See also* Brett R. Turner, *Equitable Distribution of Property*, 612 (2d ed 1994) (stating that courts that permit assumptions about future tax liabilities on pensions "have often been influenced by the indisputable fact that income tax will almost certainly be payable upon any pension benefits received by the owner. While it may be difficult to determine the amount of tax which will be due, the difficulty in valuing is no excuse for ignoring a liability which will clearly be incurred."). The record supports the tax rates used by the trial court in discounting the value of husband's retirement accounts. We conclude that the trial court did not err in its valuation of husband's retirement accounts.

Affirmed. No costs to either party.

**DE MUNIZ, P. J.,** dissenting.

I dissent from the majority's resolution of wife's first assignment of error. I agree with the majority that the increase in value of the office building is a marital asset and that husband did not rebut the presumption of wife's equal contribution to the increase in the equity in the property. I do not agree with the majority that, nonetheless, "it is just and equitable that husband receive the $80,000 in increased equity in the dental building." 153 Or App at 132.

The majority arrives at its holding because it concludes that wife would have "no basis to claim any portion of the $80,000" if husband had obtained the loan and paid it off

after the marriage, and "it seems inequitable to allow the fortuity of the timing and manner of husband's reduction of his debt to dictate the result." 153 Or App at 131. I do not agree with that rationale. The timing of the loan is relevant only insofar as it determined that husband brought to the marriage an asset worth $22,000 instead of an asset worth $102,420. At dissolution, that asset had gained in value to $120,000. As the majority correctly recognizes, the presumption of equal contribution was not rebutted on this record. Therefore, payment of the debt was not made by husband, as the majority states, but rather by *both* parties.

If the $80,000 that was used to pay off the debt had been used to acquire marital assets other than the equity in the building, I do not believe that there would be any question but that wife would share in those assets. I conclude that it is just and equitable for wife to share in the marital asset of increased value of the building under these circumstances.