Argued and submitted May 14, 2009, dissolution judgment modified to award wife an additional $140,800, to be paid in monthly installments over 10 years, otherwise affirmed May 5, appellant's petition for reconsideration filed May 11 and respondent's response to petition for reconsideration filed May 14 allowed by opinion June 9, 2010
See 235 Or App 570, 232 P3d 996 (2010)

# In the Matter of the Marriage of

## Bret M. HIXSON,
*Petitioner-Respondent,*
*and*

## DebraLee HIXSON,
*Respondent-Appellant.*

## Benton County Circuit Court
0530571; A136730

230 P3d 946

John L. Barlow argued the cause for appellant. With him on the briefs was Barnhisel Willis Barlow & Stephens, PC.

Pamela S. Hediger argued the cause for respondent. With her on the brief were Laurie J. Hart and Evashevski, Elliott, Cihak & Hediger, P.C.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Wife appeals from a dissolution judgment, assigning error to the division of property and to the spousal support award. We affirm as to spousal support without further discussion and write to address the property division. On *de novo* review, ORS 19.415(3) (2007),[1] we conclude that, although the trial court correctly found that husband had overcome the presumption of equal contribution with respect to the marital appreciation of his veterinary clinic, the trial court erred in failing to consider wife's homemaker contribution with respect to the marital appreciation in determining a just and proper division of the marital property. We therefore modify the judgment accordingly.

The parties were married in June 1993, and they separated in August 2002. At the time of trial, the parties had been separated for over four years. Husband had continued to support wife during the separation. There were no children of the marriage, but wife has an adult daughter who was six years old when the parties married and who lived with the parties during the marriage. At the time of trial, husband was 55 years old and wife was 51. Both are in good health.

Husband is a licensed veterinarian and a co-owner and employee of Alpine Animal Hospital, P.C. He has worked in the clinic for 30 years and became an owner in 1989. His gross income in 2006 was $171,420, which includes a monthly salary of $10,000 and a bonus at the end of the year.

Wife, who has a high school diploma, worked as a homemaker during the marriage and cared for her daughter, who was born in 1987. From 1991 and during the first few years of the marriage, wife worked part time as a sales clerk in her parents' drugstore as well. Wife is not currently employed and has not worked outside the home since 1996. Husband encouraged wife to further her education if she wanted to, but she was content to work part time and to care for her daughter. In the past, she had worked as a flight attendant, a model, and a sales clerk. She has no current

---

[1] This case was filed before the effective date of the 2009 amendments to ORS 19.415(3)(b) that made *de novo* review discretionary with the Court of Appeals. Or Laws 2009, ch 231, § 2.

plans to further her education or to seek vocational training. Wife testified that she has plans to return to work, and the trial court found that she is capable of earning minimum wage.

When the parties married, they lived together in a house on Highland Drive in Corvallis that husband had owned before the marriage. Together the parties remodeled the house and landscaped the yard, and wife did extensive redecorating. Wife did all the cooking and kept the house. She also did husband's laundry for several years. In 1993, shortly after the parties were married, wife and her daughter moved out of the Highland Drive house and into wife's parents' house for a period of 10 months because of allergies related to the remodeling projects. From 1994 to 2002, the family lived together in the Highland Drive house.

In 2001, wife and her daughter again began to experience health problems and ultimately discovered that mold was the cause. In May 2002, the parties bought a second house in Corvallis, on Sundance Circle, for wife and her daughter to live in. Husband remodeled the Sundance Circle house before wife and her daughter moved into it in August 2002. Wife participated by helping with decisions about the remodel and by providing husband with refreshments while he worked. After the move, wife remained financially dependent on husband, who continued to maintain the Sundance Circle house and pay its mortgage, until December 2005, when husband filed a petition for dissolution, after which husband began paying temporary support.

The marital property consists of the parties' two houses, both subject to mortgages; several retirement accounts; husband's profit-sharing plan; and husband's interest in the veterinary clinic. In its property distribution, the trial court awarded each party the house that he or she was living in and its corresponding debt; awarded each party his or her own retirement, savings, and checking accounts; and equally divided the marital appreciation of husband's profit-sharing plans. The court awarded wife an equalizing judgment in the amount of $25,777. The court made no findings as to value or marital appreciation of the veterinary clinic and did not include it in consideration of the property

division, because it determined that husband had overcome the presumption of wife's equal contribution to that appreciation and that wife should not share any of the value of that asset. The court awarded wife five years of stepped down maintenance spousal support, beginning with $3,750 per month for six months, then $3,250 per month for 18 months, and $2,750 per month for 36 months.

On appeal, wife challenges both the spousal support award and the property division. We have considered and reject without discussion wife's contention that the spousal support award is inadequate. We write to address wife's second assignment of error, in which she challenges the trial court's failure to award her any part of the marital appreciation of the veterinary clinic.

ORS 107.105(1)(f) requires that the division of property between spouses at dissolution be "just and proper." The Supreme Court's decision in *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004), provides the analytical framework for making a just and proper division of property. Under *Kunze*, the first step is to determine whether the disputed asset is a "marital asset" because it was acquired during the marriage. *Id.* at 134. If it is, the asset is subject to a rebuttable presumption of equal contribution. *Id.* The presumption of equal contribution applies to the growth or increase in value of an asset during the marriage, *Massee and Massee,* 328 Or 195, 207, 970 P2d 1203 (1999), including, for example, the increase in value of a business.

Either party may seek to overcome the presumption of equal contribution. *Id.* at 204. The party seeking to do so has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset. *Kunze,* 337 Or at 134. If the presumption is not rebutted, an equal division of the asset is appropriate. If the presumption is rebutted, the court distributes the asset without regard to any presumption but rather based on what is "just and proper in all the circumstances," considering the social and financial objectives of the dissolution. *Id.* at 135. The equitable considerations that go into the determination of what is just and proper include the preservation of assets, the

achievement of economic self-sufficiency, the particular needs of the parties, and the extent to which a separately acquired asset has been integrated into the joint finances. *Id.* at 136.

■ ORS 107.105(1)(f) provides that a spouse's contribution as a homemaker is to be considered as a contribution to the acquisition of marital assets. Thus, in determining the spouse's overall contribution, the court must consider the magnitude of the homemaker spouse's homemaker contribution. *Massee*, 328 Or at 203.

■ Here, the only asset in dispute is the veterinary clinic, which husband owned at the time of the marriage. The record shows that husband and another veterinarian acquired the stock of the veterinary clinic from their former employer in 1989. They purchased the stock with a down payment of $20,000 and a promissory note from the veterinary clinic, which husband personally guaranteed. The veterinary clinic then paid off the note over 10 years, with corporate income that husband testified otherwise probably would have been retained by the corporation or paid out in salary or bonuses. When the parties married in 1993, six years remained on the note. When the note was paid off in 1999, husband's salary increased significantly.

Although the value of the veterinary clinic is disputed, the parties agree that, over the course of the marriage, it increased in value. That increase in value is a marital asset, to which a presumption of equal contribution applies. *Massee*, 328 Or at 207. Husband sought to overcome the presumption of wife's equal contribution by establishing that her contributions, which were primarily as a homemaker, were significantly less valuable than his own. The trial court found that the presumption had been rebutted and, further, that wife was not entitled to any portion of the appreciation of the value of the business. On appeal, wife asserts that the evidence shows that she made substantial indirect contributions to the business through her activities as a homemaker and that the presumption therefore has not been rebutted. Alternatively, she contends that she is nonetheless entitled to a share of the business appreciation under a just and proper division of assets.

The Supreme Court has addressed the significance of the "homemaker" contribution in several opinions. In *Stice and Stice*, 308 Or 316, 329, 779 P2d 1020 (1989), the court stated that,

"[i]n the context of ORS 107.105(1)(f), the legislative mandate to consider a homemaker-spouse's contribution serves to reinforce the statutory presumption that both parties to a marriage contribute equally to the acquisition of property during the marriage. The provision effectively places the homemaker-spouse's non-economic contributions on a par with the breadwinner-spouse's direct economic contribution to the acquisition of property."

In *Massee*, 328 Or at 202-03, the court further explained the significance of the contributions of a homemaker in the division of marital property:

"A homemaker spouse contributes to the acquisition of marital assets, because the performance of domestic tasks by one spouse frees the other spouse to devote energy and concentration to other tasks that may generate marital assets. * * *

"The third sentence of [ORS 107.105(1)(f) stating that the court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets] has two significant features. First, that sentence requires the court to determine that a homemaker spouse made '*a* contribution' (emphasis added) to the acquisition of marital assets. That sentence prohibits the court from determining that the homemaker spouse made *no* contribution to the acquisition of marital assets simply because that spouse attended to the home and family and, consequently, played no direct role in the business or other activity that created marital assets. *Second, that sentence does not assign any particular evidentiary weight to the homemaker's contribution. The court must determine the magnitude and, thus, the legal effect of a homemaker's contribution to the acquisition of marital assets in accordance with the evidence in each case.*"

(Last emphasis added.) The court explained how the magnitude of the homemaker's contribution is to be assessed in determining whether the presumption of equal contribution to a marital asset has been rebutted:

"In assessing the magnitude of the homemaker spouse's contribution, and in comparing the homemaker spouse's contribution to that of the breadwinner spouse in order to determine whether the presumption of equal contribution is rebutted, the court must refrain from either overvaluing or undervaluing the contribution of the homemaker spouse merely because the homemaker spouse made that contribution in the context of the household or the family, rather than in a commercial or other nondomestic context. The court also must keep in mind that, in the categorical sense, a homemaker spouse's contribution in a domestic setting is indistinguishable analytically from the breadwinner spouse's contribution to the acquisition of marital assets in a business or other nondomestic setting. *Stice*, 308 Or at 329.

"*In deciding whether the presumption of equal contribution is rebutted, the court first must determine the magnitude of each spouse's overall contribution to the acquisition of marital assets from evidence in the record. If one spouse is a homemaker, that determination necessarily will include an assessment of the homemaker spouse's contribution to the enterprise of homemaking. A homemaker spouse's overall contribution may consist of a combination of domestic contributions and economic or other nondomestic contributions.*

"Once the court has determined each spouse's overall contribution to the acquisition of marital assets, the court compares the respective contributions of the spouses. The ultimate question is whether the spouse seeking to rebut the presumption of equal contribution has proved, by a preponderance of the evidence, that the other spouse did not contribute equally to the acquisition of marital assets."

*Massee*, 328 Or at 204-05 (emphasis added; footnotes omitted).

Here, wife was primarily a homemaker. She cleaned the house and did most of the cooking. She cared for her daughter, whom husband testified he probably would have adopted if the biological father had relinquished parental rights. Wife loaned husband money for remodeling projects from an investment account that husband created and funded for wife so that she could have her own funds. Husband also had extensive household chores. He managed the parties' finances, maintained the parties' houses and yards,

and also provided the funding and much of the labor for their remodels. We find that, although the parties shared equally in the household responsibilities, wife made significant contributions as a homemaker over the almost nine years that the parties lived together.

The next step is to determine the parties' overall contributions to the acquisition of the marital appreciation of the veterinary clinic. The determination of wife's *overall* contribution necessarily requires consideration of wife's contribution as a homemaker, and wife's overall contribution is to be considered in the comparison of the respective contributions of the parties to the acquisition of marital assets. The homemaker contribution "prohibits the court from determining that the homemaker spouse made *no* contribution to the acquisition of marital assets simply because that spouse attended to the home and family and, consequently, played no direct role in the business or other activity that created marital assets." *Massee*, 328 Or at 203 (emphasis in original). However, as we noted in *Terhaar and Polance*, 171 Or App 112, 117, 14 P3d 657 (2000), the fact that one spouse made a contribution as a homemaker does not automatically require an equal division of marital assets. The court is not prohibited from finding that the homemaker spouse's overall contribution was less than equal. In fact, the court explained in *Massee* that the statute "does not assign any particular evidentiary weight to the homemaker's contribution. The court must determine the magnitude and, thus, the legal effect of a homemaker's contribution to the acquisition of marital assets in accordance with the evidence in each case." *Massee*, 328 Or at 203. Where, as here, the marital asset is a business that has grown through an investment of labor, in considering the magnitude of each spouse's contribution, it is relevant to consider the extent to which each party's labors contributed to the growth of the enterprise.

Here, wife was not involved in the daily affairs of the business. She did not work in the business, nor was she an owner, officer, or shareholder. She was, however, incidentally involved by assisting with holiday parties and, when the parties lived together, taking emergency calls at home after business hours. At the beginning of the marriage, she also

accompanied husband on "go-sees," farm calls for treatment of large animals.

Wife contends that the profits of the veterinary clinic that went toward payment of the note for the purchase of the clinic during the first six years of the marriage also reflect a marital contribution to the acquisition of the business that should be partially credited to her, to the extent that husband was required to forgo personal income during that time. We have held that a spouse's employment income during the marriage is a "marital asset." *Lind and Lind*, 207 Or App 56, 68, 139 P3d 1032 (2006). We have further held that income retained by the business of a spouse that otherwise would have been income to that spouse is considered a marital contribution to the acquisition of the asset. *Olinger and Olinger*, 75 Or App 351, 355-56, 707 P2d 64, *rev den*, 300 Or 367 (1984). Here, however, unlike in *Olinger*, the profit was not retained by the business. It was never income to husband or available to him as income; rather, it was used to pay off corporate debt. In *Drews and Drews*, 153 Or App 126, 132, 956 P2d 246 (1998), we held that, "[u]nder most circumstances, we do not consider the funds used to satisfy a debt during the marriage in determining the appropriate property distribution."

In *Drews*, at the time the parties were married, the husband's dental practice owned a building that was encumbered with a debt. The debt was paid off during the marriage by applying rental payments received by the dental practice. *Id.* at 128-29. The wife was an employee and shareholder of the dental practice. In view of the wife's interest and involvement in the business, we held that the husband had failed to overcome the presumption of the equal contribution to the increase in the value of the dental practice's interest in the building attributable to the repayment of the debt. We held, nonetheless, that it was not just and equitable for the wife to receive any share of the marital appreciation attributable to payment of the debt. *Id.* at 131. In rejecting the contention that the wife should be awarded property that represented her share of the funds used to pay off the debt, we declined to engage in speculation that, had the parties not used the funds to pay off the debt, they would have used the funds to

acquire assets that would still be marital assets at the time of dissolution. *Id.*

In this case, for the first six years of the marriage, the veterinary clinic was encumbered by a debt that had been acquired before the marriage and that was paid from corporate profits. Unlike in *Drews*, wife was not an employee or shareholder in the business. However, for the same reasons expressed in *Drews, id.*, we decline to treat the corporation's payments on the note as a marital contribution to the acquisition of the asset.

Husband's overall contribution to the acquisition of the asset includes long hours of work at the clinic. It is true that wife provided support at home by cooking and keeping house. However, in light of the fact that the business grew through the personal efforts of its employees, we find that wife's overall contribution to the growth of the business was less than equal, and we agree with the trial court that husband has rebutted the presumption of equal contribution to the appreciation of the veterinary clinic. Nevertheless, wife's contribution, although not equal to husband's, is not to be disregarded and will be taken into consideration in the just and proper division of the asset. *Massee*, 328 Or at 205.

██ ██ Because husband has rebutted the presumption of equal contribution with respect to the veterinary clinic, the court distributes the asset without regard to any presumption but rather based on what is "just and proper in all the circumstances." *Kunze*, 337 Or at 135. The inquiry into the just and proper division includes consideration of the statutory factors, including the determination that the presumption of equal contribution has been overcome, but also takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the particular property is equitable. *Id.* Some of the equitable considerations include the preservation of assets, the achievement of economic self-sufficiency, the particular needs of the parties, and the extent to which a separately acquired asset has been integrated into the joint finances. *Id.* at 136. The trial court's determination of a just and proper division of marital property is a matter of discretion and will not be disturbed unless we conclude that

the trial court misapplied the statutory and equitable considerations required under ORS 107.105(1)(f). *Id.*

The trial court determined that, because wife had not contributed equally to the acquisition of the marital appreciation in the veterinary clinic, she was not entitled to any share of the asset. That conclusion was erroneous. Wife's less-than-equal contribution to the acquisition of an asset is to be considered in determining a just and proper distribution of that asset. *Massee*, 328 Or at 205. Wife's overall contribution through homemaking, although not equal to husband's, was entitled to some recognition in the just and proper division of assets. Further, to the extent that the business provided income to the household, it was commingled with the parties' finances. *See Kunze*, 337 Or at 141. Finally, as in *Niman and Niman*, 206 Or App 259, 268, 136 P3d 105 (2006), there are times when, despite the rebuttal of a presumption of equal contribution with respect to particular marital assets, equitable considerations such as the need for economic self-sufficiency nonetheless require us to divide that property more or less equally. Here, as in *Niman*, wife has few assets. In light of her contributions as homemaker over the course of the nine years of marital cohabitation, her low earning potential, and the relatively brief duration of spousal support, we find on *de novo* review that it is just and proper that wife share in the marital appreciation of the business.

Because the trial court determined that wife was not entitled to any share of the marital appreciation of the veterinary clinic, it did not determine the value of that asset. We have reviewed the testimony of each party's valuation expert and find that wife's expert presented a more persuasive appraisal. We therefore find that husband's share of the clinic was valued at $201,000 as of 1993, when the parties were married, and $482,600 as of the date of trial, for an appreciation of $281,600 over the 14 years of the marriage. In light of the other aspects of the property division and spousal support award and the parties' circumstances, we find that it is just and proper to award wife an equal share of that appreciation, or approximately $140,800, to be paid by husband in monthly installments over a period of 10 years. That amount,

together with the other assets awarded to wife, will provide her with a greater chance for financial self-sufficiency.

Dissolution judgment modified to award wife an additional $140,800, to be paid in monthly installments over 10 years; otherwise affirmed.